**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WP COMPANY LLC d/b/a THE WASHINGTON POST, BLOOMBERG L.P., DOW JONES & COMPANY, INC., PRO PUBLICA, INC., THE NEW YORK TIMES COMPANY, AMERICAN BROADCASTING COMPANIES, INC. d/b/a ABC NEWS, AMERICAN CITY BUSINESS JOURNALS, CABLE NEWS NETWORK, INC., NBCUNIVERSAL MEDIA, LLC d/b/a NBC NEWS, THE ASSOCIATED PRESS, THE CENTER FOR INVESTIGATIVE REPORTING d/b/a REVEAL, | |
| *Plaintiffs,* | Case No. 1:20-cv-01240 (*JEB*) |
| v. | |
| U.S. SMALL BUSINESS ADMINISTRATION, | |
| *Defendant.* | |

**<u>DECLARATION OF WILLIAM MANGER</u>**

I, William Manger, hereby declare and state the following, pursuant to the provisions of 28 U.S.C. § 1746:

1.   At all times relevant to this lawsuit, I have served as the Chief of Staff in the Office of the Administrator and as the Associate Administrator for the Office of Capital Access at the U.S. Small Business Administration ("SBA"), located at 409 Third Street SW, Washington D.C. 20416. The statements contained in this declaration are based upon my personal knowledge, information provided to me in my official capacity, and conclusions and determinations reached and made in accordance therewith.

2.   As the Chief of Staff, I am responsible for overseeing the daily operations of the Agency.  That responsibility includes, but is not limited to, overseeing the Payroll Protection Program (PPP) loan program, a new temporary loan program created by the CARES Act, and the Economic Injury Disaster Loan (EIDL) Program.

3.   As the Associate Administrator for the Office of Capital Access, I manage SBA's portfolio of direct and guaranteed non-disaster loans, nine operation centers, and 560 employees. Because of the nature of my official duties, I am familiar with the procedures followed by the SBA in responding to all requests under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, for information from its files regarding loans under the PPP and EIDL, including the SBA's handling of Plaintiffs' FOIA requests in these actions.  In accordance with *Vaughn v. Rosen*, 454 F. 2d 820 (D.C. Cir. 1973), this declaration supports the SBA's motions for summary judgement. Furthermore, this declaration provides the Court and Plaintiffs with the administrative history of the FOIA requests; describes the procedures used to search for, review, and process the responsive records; and provides the SBA's justification for withholding records in part under FOIA Exemptions 4 and 6.  5 U.S.C. §§ 552(b)(4), (b)(6).

## The CARES Act and SBA's PPP and EIDL Loan Administration

4.   The SBA's authority to issue non-disaster loans flows from section 7(a) of the Small Business Act, which is titled "Loans to small business concerns; allowable purposes; qualified business; restrictions and limitations."  Pub. L. 85-563, § 7, 72 Stat. 384 (1958) (codified at 15 U.S.C. § 636).  Under section 7(a), the SBA is "empowered," subject to certain qualifications, "to make loans to any qualified small business concern," which "may be made either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed) basis."  15 U.S.C. § 636(a).

5.   SBA has authority to make direct disaster loans under Section 7(b) of the Small Business Act.  15 U.S.C. § 636(b).  SBA is authorized to make economic injury disaster loans if it "determines that the [small business] concern, the organization, or the cooperative has suffered substantial economic injury" as a result of a disaster.  15 U.S.C. § 636(b)(2).  SBA has authority to declare an economic injury disaster based on a certification from a state governor that "small businesses, private nonprofit organizations, or small agricultural cooperatives (1) have suffered economic injury as a result of such disaster, and (2) are in need of financial assistance which is not available on reasonable terms in the disaster stricken area."  15 U.S.C. § 636(b)(2)(D).  The Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020, provided that "for purposes of Section 7(b)(2)(D) of the Small Business Act, coronavirus shall be deemed to be a disaster."  Pub. L. 116-123, Title II (March 6, 2020).  By March 21, 2020, SBA had received economic injury disaster declaration requests from the governors of every state and territory and issued declarations in all states and territories.  See 85 FR 20015 (April 9, 2020).

6.   On March 13, 2020, President Trump declared the ongoing Coronavirus Disease 2019 (COVID–19) pandemic of sufficient severity and magnitude to warrant an emergency declaration

3

for all States, territories, and the District of Columbia.  With the COVID–19 emergency, many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, tribal, and local public health measures that are being taken to minimize the public's exposure to the virus.  These measures, some of which are government-mandated, are being implemented nationwide and include the closures of restaurants, bars, and gyms.  In addition, based on the advice of public health officials, other measures, such as keeping a safe distance from others or even stay-at-home orders, are being implemented, resulting in a dramatic decrease in economic activity as the public avoids malls, retail stores, and other businesses.  On March 27, 2020, President Trump signed into law the CARES Act, passed by Congress to provide emergency economic assistance and other support to help individuals, families, businesses, and health care providers cope with the enormous economic and public health crises triggered by the pandemic. Pub. L. No. 116-136, 134 Stat. 281.

7.   SBA received funding and authority through the CARES Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID–19 emergency.  Section 1102 of the CARES Act temporarily permits SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program."  To further respond to the emergency, SBA also drew on its authorities under the pre-existing Economic Injury Disaster Loan (EIDL) Program.

8.   The CARES Act initially appropriated $349 billion to the section 7(a) program to fund the PPP.  Participating lenders began accepting PPP loan applications on or about April 3, 2020.

9.   Loans guaranteed under the PPP differ in significant ways from regular loans made under SBA's 7(a) program.  Among these differences, the PPP authorizes the SBA to make covered loans to various non-profit organizations, independent contractors, and self-employed

individuals, in addition to sole proprietorships and other small business concerns. In addition, PPP loan amounts are based specifically on the total compensation paid to the borrower's employees, so the PPP loan amounts reflect a small business's payroll and reflect a sole proprietor's or independent contractor's income.

10.   SBA also administers the EIDL and EIDL Advance Programs. Pub. L. No. 116-136, 134 Stat. 281; *see also* 13 C.F.R. §123.300 *et seq*.

11.   SBA's EIDL program offers long-term, low-interest financial assistance for eligible entities, including small business concerns, businesses with 500 or fewer employees (including sole proprietorships, independent contractors and self-employed persons), private non-profit organizations, agricultural enterprises and tribal small business concerns with less than 500 employees, affected by COVID-19.

12.   EIDL loans may be used for working capital, notes payable, and accounts payable, in addition to expenses that result from the disaster's impact. An EIDL borrower can also have a PPP loan, but must use the loan proceeds from each for different purposes. In addition, small businesses, non-profits and other eligible entities may request, as part of their loan application, an EIDL Advance, amounting to $1,000 for each employee up to $10,000. The EIDL Advance does not have to be repaid even if the applicant is subsequently denied a loan and is designed to provide emergency economic relief to businesses that are experiencing a temporary loss of revenue.

13.   By April 15, 2020, SBA had processed more than 14 years' worth of PPP loans in less than 14 days, and by August 8, 2020, it had processed 5,046,654 loans totaling $520,438,822,408 in approved dollars. That unprecedented expansion of SBA's funding required the full attention of the agency's employees.

14.   In addition to processing an unprecedented number of PPP loans, SBA was also tasked with drafting and implementing an entirely new set of regulations to provide guidance to borrowers and lenders of the PPP as well as issuing procedural notices and new lender forms. *See* Paycheck Protection Program Interim Final Rules at https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/paycheck-protection-program#section-header-9.

15.   Congress intended in the CARES Act for SBA to provide relief to America's small businesses expeditiously to mitigate the current economic conditions arising from the COVID–19 emergency. In light of the economic crisis facing the nation at the time of the enactment of the CARES Act, including an unprecedented increase in unemployment nationwide and the shuttering of small businesses across the country, there was an urgent need to enable banks and other lenders to begin making PPP loans rapidly. With millions of borrowers receiving hundreds of billions of dollars of support in a matter of weeks, it was not possible to adopt borrower-specific measures to protect confidential financial information. SBA would not have had the operational capacity to review even a small fraction of the company-specific reasons borrowers might provide for why information about their PPP loans constituted sensitive, confidential information.

**Administrative History of Plaintiffs' FOIA Requests**

16.   Plaintiffs in Civil Action No. 20-cv-1240 are WP Company d/b/a The Washington Post, Bloomberg, LP, Dow Jones Company, Inc., ProPublica, Inc., The New York Times Company, American Broadcasting Companies, Inc. d/b/a ABC News, American City Business Journals, Cable News Network, Inc., NBC Universal Media, LLC d/b/a NBC News, The Associated Press, The Center for Investigative Reporting d/b/a Reveal. Plaintiff in Civil Action No. 20-cv-1614 is the Center for Public Integrity.

17.   Plaintiffs made several requests in April and May 2020 under FOIA for information on the loan recipients under PPP and EIDL. Plaintiffs submitted their FOIA requests separately

6

and at various times.  Each request sought the same information for loan-level data regarding

businesses that received loans under the PPP and EIDL, including, among other things, borrower

name and address, amount of approved loan, race, ethnicity, gender of borrowers, and (for PPP

only) lender name.  In particular:

**The Washington Post Requests**

18.   On April 24, 2020, the Washington Post submitted a FOIA request for:

> Data from the Paycheck Protection Program loan program, including names of
> applicants, dates of applications, and loan amounts approved from April 3, 2020
> until the completion of this loan program. The SBA's website defines the following
> as information generally disclosed under FOIA and we request this data for all
> recipients of Paycheck Protection Act loans:  (1) Names and commercial street and
> email addresses of recipients of approved loans; (2) Date of loan approval and date
> of disbursement (if available);  (3) Names of officers, directors, stockholders or
> partners of recipient firms; (4) Kinds and amounts of loans, loan terms, interest
> rates, maturity dates, general purpose; (5) Identity and location of participating
> banks.

> Data from the Economic Injury Disaster loan program (EIDL), including names of
> applicants, dates of applications, and loan amounts approved from March 12, 2020
> until the completion of this loan program. We request that the data include: (1)
> Names and commercial street and email addresses of recipients of approved loans;
> (2) Date of loan approval and date of disbursement (if available); (3) Names of
> officers, directors, stockholders or partners of recipient firms; (4) Kinds and
> amounts of loans, loan terms, interest rates, maturity dates, general purpose; (5)
> Identity and location of participating banks

19.   SBA assigned tracking number SBA-2020-000946 to the PPP portion of the request

and assigned tracking number SBA-2020-000947 to the EIDL portion of the request.  The

Washington Post requested expedited processing for the requests.

20.   SBA responded on June 12, 2020 directing the Washington Post to the statistical

information found at: https://www.sba.gov/about-sba/open-government/foia#section-header-32

and provided requester with appeal rights within 90 days.

21.   SBA responded again on June 15, 2020, directing the Washington Post to the same

statistical information and providing requester with appeal rights.

22.   SBA did not respond to the request for expedited processing.

**Bloomberg Requests**

23.   On April 8, 2020, Bloomberg News submitted a FOIA request for:

24.   SBA assigned tracking number SBA-2020-000555 to the PPP portion of the request and assigned tracking number SBA-2020-000557 to the EIDL portion of the request.  Bloomberg requested expedited processing for the requests.

25.   SBA responded to 000555 on April 20, 2020 and to 000557 on April 21, 2020, directing Bloomberg to the statistical information posted on its website and providing requester with appeal rights.  SBA did not respond to the request for expedited processing.

26.   On April 15, 2020, Bloomberg submitted another request for the same information, except that the dates covered loans made between 4/9/2020 and 4/15/2020.  SBA assigned FOIA tracking numbers SBA-2020-000620 and SBA2020-000622. Expedited processing was requested.

27.   SBA responded to SBA-2020-000620 on April 23, 2020 directing Bloomberg to the statistical information posted on its website and providing requester with appeal rights.  It also denied as moot the request for expedited processing because the response was sent within the expedited processing time frame of ten days.

28.   SBA responded to SBA-2020-000622 on April 21, 2020 directing Bloomberg to the statistical information posted on its website and providing requester with appeal rights.  It also granted the request for expedited processing.

29.   On April 23, 2020, Bloomberg submitted another request for the same information except that the dates covered loans made between 4/16/2020 and 4/22/2020.  SBA assigned FOIA tracking numbers SBA-2020-000910 and SBA-2020-000911. Expedited processing was requested.

30.   SBA responded to SBA-2020-000910 on May 4, 2020 directing Bloomberg to the statistical information posted on its website and providing requester with appeal rights.  It also denied as moot the request for expedited processing because the response was sent within the expedited processing time frame of ten days.

31.   SBA responded to SBA-20202-000911 on May 14, 2020 directing Bloomberg to the statistical information posted on its website and providing requester with appeal rights.  It granted the request for expedited processing.

32.   On April 29, 2020, Bloomberg submitted another request for the same information except that the dates covered loans made between 4/23/2020 and 4/29/2020.  SBA assigned FOIA tracking numbers SBA-2020-001018 and SBA2020-001019. Expedited processing was requested.

33.    SBA responded to SBA-2020-001018 on May 6, 2020 directing Bloomberg to the statistical information posted on its website and providing requester with appeal rights. It also denied as moot the request for expedited processing because the response was sent within the expedited processing time frame of ten days.

34.   SBA responded to SBA-2020-001019 on June 18, directing Bloomberg to the statistical information posted on its website and providing requester with appeal rights.  It granted the request for expedited processing.

**Dow Jones Requests**

35.   On April 3, 2020, Down Jones submitted a FOIA request for:

A summary database of information for all approved loans under the Paycheck Protection Program of the 2020 CARES Act from the time the program began accepting applications through the end of business on April 13, 2020. Please include all data fields the Small Business Administration tracks for each loan that it determines is information generally disclosed under FOIA, including but not limited to: 1) names, commercial street addresses, and e-mail addresses of recipients of approved loans, 2) names of officers, directors, stockholders or partners of recipient firms, 3) kinds and amounts of loans, loan terms, interest rates, maturity dates, general purpose, etc., 4) business type 5) bank name and bank

commercial street address, 6) approval date, 7) disbursement date, 8) NAICS description, 9) franchise name and franchise code, if applicable

36.   SBA assigned this FOIA request tracking number SBA-2020-000580.   Expedited processing was requested.

37.   SBA responded on April 20, 2020 directing Dow Jones to the statistical information posted on its website and providing requester with appeal rights. It also denied as moot the request for expedited processing because the response was sent within the expedited processing time frame of ten days.

38.   On May 1, 2020, Dow Jones submitted the same FOIA request, which was assigned tracking number 2020-001060. Expedited processing was requested.

39.   SBA responded on May 11, 2020 directing Dow Jones to the statistical information posted on its website and providing requester with appeal rights.  It also denied as moot the request for expedited processing because the response was sent within the expedited processing time frame of ten days.

40.   On May 4, 2020, Down Jones submitted the same FOIA request, which was assigned tracking number 2020-001088. Expedited processing was requested.

41.   SBA responded on June 17, 2020 directing Dow Jones to the statistical information posted on its website and providing requester with appeal rights.  It denied the request for expedited processing.

**Propublica Requests**

42.   On April 23, 2020, Propublica submitted a FOIA request for:

Loan level information about all loans made under the Paycheck Protection Program (PPP). I also request the same information for Emergency EIDL Grants. Specifically, for both these programs, I request the same 34 fields the SBA provides through its "SBA 7(a) & 504 loan data reports" on its FOIA website. See: https://www.sba.gov/about-sba/open-government/foia#section-header-32        and http://imedia.sba.gov/vd/general/foia/7a_504_FOIA%20Data%20Dictionary.xlsx.

However, in addition to those fields already provided, I also request information on the amount of forgiveness allowed for each loan. This is a special feature of the PPP loans under Section 1106 of the CARES Act.

43.   SBA assigned this FOIA request tracking number SBA-2020-000914. Expedited processing was requested.

44.   SBA responded on May 4, 2020 directing Propublica to the statistical information posted on its website and providing requester with appeal rights.  It also denied as moot the request for expedited processing because the response was sent within the expedited processing time frame of ten days.

45.   On April 30, 2020, Propublica submitted another FOIA request for "loan level information about companies that received subsidies for SBA 7(a) loans under Section 1112 of the CARES Act, 'Subsidy for Certain Loan Payments.' The section enables the SBA to pay the principal, interest, and fees that are owed on specified loans for six months" and "the beginning date of the 6-month period that the SBA paid the loan payments, the end date, and the amount paid by the SBA under Section 1112."

46.   SBA assigned this FOIA request tracking number SBA-2020-001043.  Expedited processing was requested.

47.   SBA denied the request for expedited processing on July 16 as moot.

**The New York Times Request**

48.   On April 27, 2020, the New York Times submitted a FOIA request for:

A summary database of information for all approved loans under the Paycheck Protection Program of the 2020 CARES Act from the time the program began accepting applications through the end of business on April 13, 2020. Please include all data fields the Small Business Administration tracks for each loan that it determines is information generally disclosed under FOIA, including but not limited to: 1) names, commercial stress addresses, and e-mail address of recipients of approved loans, 2) names of officers, directors, stockholders or partners of

recipient firms, 3) kinds and amounts of loans, loan terms, internet rates, maturity dates, general purpose, etc., 4) business type, 5) bank name and bank commercial street address, 6) approval date, 7) disbursement date, 8) NAICS description, 9) franchise name and franchise code, if applicable.

49.    SBA assigned this request FOIA tracking number SBA-2020-000982. The New York

Times requested expedited processing for this FOIA request.

50.    SBA responded on June 8, 2020 directing the New York Times to the statistical

information posted on its website and providing requester with appeal rights.  SBA denied the

request for expedited processing.

## The ACBJ Requests

51.    On April 16, the Portland Business Journal submitted a FOIA request for:

1.       Paycheck Protection Program – All public data on every loan made through the program, including, but not limited to, the name and location of the borrower and her/his company, the bank that approved the loan, the amount of the loan, and any other public data, including race/ethnicity/gender of the borrower, if that information is gathered.

2.       Coronavirus/COVID-19 Economic Injury Disaster Loans - All public data on every loan made through the program, including, but not limited to, the name and location of the borrower and her/his company, the bank that approved the loan, the amount of the loan, and any other public data, including race/ethnicity/gender of the borrower, if that information is gathered.

52.    SBA assigned this FOIA request tracking numbers SBA-2020-000628 and SBA-

2020-000630.

53.    SBA responded on April 22, 2020 directing Portland Business Journal to the statistical

information found at: https://www.sba.gov/about-sba/open-government/foia#section-header-32

and provided requester with appeal rights within 90 days.

54.    On April 27, 2020, Portland Business Journal filed an appeal of SBA's response to

SBA-2020-000630 to SBA's Office of Hearings and Appeals.  OHA has not issued a decision

pending resolution of the current litigation.

55.  SBA responded to the other part of the request on May 12, 2020, directing the Portland

Business Journal to the same statistical information and providing requester with appeal rights.

### ABC News Request

56.  On April 13, 2020, ABC News submitted a FOIA request for:

Access to Small Business Administration figures describing how much of the
Paycheck Protection Program (PPP) funds that have been approved for small
business owners have actually been disbursed to those business owners.
Specifically, I would like a breakdown of how much money was disbursed to
business owners each day, beginning with the program's inception on April 3rd (the
date on which business owners could first apply for the PPP funds). SBA provides
reporters with a figure almost daily for how much PPP money has been "approved"
for small business owners but has yet to answer any questions on how much
business owners have actually received.

57.  SBA assigned this FOIA request tracking number SBA-2020-000586.  ABC News

requested expedited processing.

58.  SBA responded on May 2, 2020 directing the ABC News to the statistical information

posted on its website and providing requester with appeal rights.  It denied the request for expedited

processing.

### CNN Request

59.  On April 16, 2020, CNN submitted a FOIA request for:

Disaggregated data for all Covid-19-related Economic Injury Disaster Loans
applications authorized by the Coronavirus Aid, Relief, and Economic Security Act
("CARE Act") and received by the Small Business Administration. This data
should include all fields that contain non-exempt information, including but not
limited to the following types of information: Unique identifiers/primary keys;
Application number; Application date; Borrower name; Borrower's city;
Borrower's county; Borrower's ZIP code; Borrower's sate; Borrower's EIN; Loan
amount; Nonprofit status; Application status; Status date; Collateral pledged; and
Purpose of loan.

60.  SBA assigned this FOIA request tracking number SBA-2020-000626.   CNN

requested expedited processing.

61.   On April 22, 2020, SBA responded to the CNN request directing them to the statistical information posted on SBA's website and providing requester with appeal rights.  It also granted the request for expedited processing.

62.   On April 28, 2020, CNN appealed the FOIA response to SBA's Office of Hearings and Appeals.  No decision has been made on the appeal pending resolution of the current litigation.

### Associated Press Requests

63.   On April 13, 2020, the Associated Press submitted a FOIA request for:

The database that SBA maintains for all loans approved and declined under the Paycheck Protection Program from the start of the program to the date of this request's filing.  SBA publicly releases data under two programs (7a and 504) also administered by the same agency office. For the purposes of this request for Paycheck Protection Program data, I request the same fields of information that SBA releases for 7a and 504.

64.  SBA assigned this FOIA request tracking number SBA-2020-000594.   The AP requested expedited processing.

65.   On April 20, 2020, SBA responded to the AP request directing them to the statistical information posted on SBA's website and providing requester with appeal rights.  It also denied as moot the request for expedited processing because the response was sent within the expedited processing time frame of ten days.

66.  On April 22, 2020, the AP submitted another FOIA request seeking:

The name of each entity approved for a Paycheck Protection Program loan (aka borrower); the entity's city; the entity's state; the entity's NAICS subsector description or code for the entity (borrower); the approved dollars for the entity's loan; the name of the lending institution (lender) on the loan; and the date of the loan's approval.

67.  SBA assigned this FOIA request tracking number SBA-2020-000882.   The AP requested expedited processing.

68.   On June 5, 2020, SBA responded to the AP request directing them to the statistical information posted on SBA's website and providing requester with appeal rights.  It also denied the request for expedited processing.

## NBC News Requests

69.   On April 17, 2020, NBC News submitted a FOIA request for:

Paycheck Protection Program (PPP) Loan Data Reports/Files, including a "loan level" list of all loans approved as part of the PPP from the start of the PPP program and through the exhaustion of the first phase of funding ($349,000,000,000) on 4/16/20.   I am requesting PPP Loan Data Reports/Files which include "loan-specific" data, including the names and addresses of all business entity or individual loan borrowers/recipients and other related and available "loan-specific" data.

70.   SBA assigned this FOIA request tracking number SBA-2020-000658.   NBC requested expedited processing.

71.   On May 2, 2020, SBA responded to NBC directing them to the statistical information posted on SBA's website and providing requester with appeal rights.  It denied the request for expedited processing.

72.   On April 17, 2020, NBC News submitted another FOIA request for:

Economic Injury Disaster Loan Program (EIDL) Loan Data Reports/Files, including a "loan level" list of all loans approved as part of the EIDL program from January 1, 2020 and through the exhaustion of the first phase of coronavirus/COVID-19-related funding on or around 04/16/20.  I am requesting EIDL Loan Data Reports/Files which include "loan-specific" data, including the names and addresses of all business entity or individual loan borrowers/recipients and other related and available "loan-specific" data.  If a subset of EIDL Loan Data Reports/Files relating to loans provided in response to coronavirus/COVID-19-related economic injury exists or is distinguishable with identifying data within the broader EIDL data, please provide the subset or the identifying data.

73.   SBA assigned this FOIA request tracking number SBA-2020-000660.   NBC requested expedited processing.

74. On April 22, 2020, SBA responded to NBC directing them to the statistical information posted on SBA's website and providing requester with appeal rights. It granted the request for expedited processing.

75. On April 29, 2020, NBC submitted another FOIA request seeking: "bank level" data for the Paycheck Protection Program (PPP) including total amounts and number of PPP loans received by small businesses in each Congressional district for all loans approved as part of the PPP from the start of the PPP and through the most recent date for which this data set is available."

76. SBA assigned this FOIA request tracking number SBA-2020-001029. NBC requested expedited processing.

77. On May 6, 2020, SBA responded to NBC directing them to the statistical information posted on SBA's website and providing the requester with appeal rights. It also denied as moot the request for expedited processing because the response was sent within the expedited processing time frame of ten days.

**Center for Investigative Reporting (d/b/a Reveal) Requests**

78. On April 21, 2020, the Center for Investigative Reporting submitted a FOIA request for:

> Spreadsheets (.csv, excel, etc.) listing each individual loan granted through each Small Business Administration's lending programs responding to the COVID-19 pandemic.

> - A spreadsheet showing each individual loan granted under the Paycheck Protection Program (PPP), from the creation of the program to the date of fulfillment. I am requesting all information publicly releasable under to law, including but not limited to the fields typically disclosed for every loan for the SBA's 7a loan program, including:
>   - Names and commercial street address, including state and zip code, and email addresses of recipients of approved loans
>   - The race of the borrower
>   - The gender of the borrower
>   - The name of the participating bank

16

- Names of officers, directors, stockholders or partners of recipient firms.
- The NAICS code of the business
- Amounts of loans, loan terms, interest rates, maturity dates.

- A spreadsheet showing each individual loan granted under the Economic Injury Disaster Loan program from March 1, 2020 to the date of fulfillment, to the level of detail described above for the PPP program.

- A spreadsheet showing each individual loan granted under the SBA Bridge Loan program from March 1, 2020 to the date of fulfillment, to the level of detail described above for the PPP program.

- A spreadsheet showing each individual action under the SBA Debt Relief program from March 1, 2020 to the date of fulfillment, to the level of detail described above for the PPP program.

79.   SBA assigned the FOIA request two tracking numbers:  SBA-2020-000828 and SBA-2020-000830.   The Center for Investigative Reporting requested expedited processing of these requests.

80.   SBA responded on April 27, 2020 directing the requester to the statistical information found at: https://www.sba.gov/about-sba/open-government/foia#section-header-32 and providing requester with appeal rights within 90 days.  It also granted the request for expedited processing.

81.   SBA responded again on June 10, 2020, directing the requester to the same statistical information and providing requester with appeal rights.  It denied the request for expedited processing.

### Center for Public Integrity Request

82.   On April 22, 2020, the Center for Public Integrity submitted a FOIA request for:

(1) All records regarding recipients of the Paycheck Protection Program, including the name and address of the borrower, amount of approved loan, name of the third-party lender, date of approved loan.

(2) All records regarding recipients of the Economic Injury Disaster Loan (EIDL)-COVID-19 related assistance program (including EIDL Advances), including name and address of the borrower, amount of approved loan, name of the third-party lender, date of approved loan.

(3) All records reflecting any communication between Administrator Jovita Carranza and her staff concerning the Paycheck Protection Program and the EIDL assistance program, including but not limited to letters, emails, memoranda, reports, appointment calendars, and telephone call logs, and dated between March 1, 2020 and the date you process this request;

(4) All records reflecting any communication between Administrator Jovita Carranza, her staff, and members of Congress and their respective staff concerning the Paycheck Protection Program and the EIDL assistance program, including but not limited to letters, emails, memoranda, reports, appointment calendars, and telephone call logs, and dated between March 1, 2020 and the date you process this request;

(5) All records reflecting any communication between Administrator Jovita Carranza, her staff, and third-party lenders concerning the Paycheck Protection Program and the EIDL assistance program, including but not limited to letters, emails, memoranda, reports, appointment calendars, and telephone call logs, and dated between March 1, 2020 and the date you process this request;

(6) All records reflecting any communication between Administrator Jovita Carranza, her staff, and borrowers under the CARES Act's paycheck protection program and the EIDL program concerning the Paycheck Protection Program and the EIDL assistance program, including but not limited to letters, emails, memoranda, reports, appointment calendars, and telephone call logs, and dated between March 1, 2020 and the date you process this request;

(7) A database or other similar electronic copy of requested records.

83.   SBA assigned FOIA tracking numbers SBA-2020-000848 to item 1; SBA-2020-000849 to item number 2; and SBA-2020-000850 to the remainder of the request.  The Center for Public Integrity requested expedited processing.

84.   SBA responded on May 14, 2020, directing the requester to the statistical information posted on SBA's website at  https://www.sba.gov/about-sba/open-government/foia#section-header-32 and providing requester with appeal rights within 90 days.  It also denied the request for expedited processing.

85.   SBA responded again on June 15, 2020 directing the requester to the same statistical information.  It also granted the request for expedited processing.

**SBA's Release Of Information About PPP And EIDL Loans**

86.   SBA issued letters in response to each of the requests, stating that it was providing statistical information on the PPP and EIDL "in an effort to keep the public informed of the assistance and actions" it was taking at that time.   The letters directed the requesters to a link that was posted on the SBA website, which provided statistics on the number and total amount of loans issued on a weekly basis under the PPP and EIDL.

87.   That website, found at https://www.sba.gov/about-sba/open-government/foia#section-header-32, stated:   "SBA is providing statistical information on the Paycheck Protection Program (PPP) loans and Economic Injury Disaster Loans (EIDL) in an effort to keep the public informed of the assistance and actions both it and the thousands of lenders across the country are taking at this difficult time.   At this time, the agency is focusing its efforts on assisting small businesses during this unprecedented disruption to the economy due to the coronavirus (COVID-19) outbreak.   The agency recognizes the need to balance the interests of transparency with the privacy and confidentiality issues release of loan information raises.   In the near future, we will be able to turn our efforts to providing loan-specific data to the public, but hope that all understand the need for the Agency to focus its efforts on fulfilling the urgent needs of small businesses."

88.   On July 6, 2020, SBA released detailed information on each of the 4.9 million PPP loans that had been made up to that point.   *See* Exhibit P ("Press Release").   The loan-level data included the following fields: city, state, ZIP code, NAICS code;[1] business type; race/ethnicity; gender; veteran status; nonprofit status; jobs reported as retained; date approved; lender; and

---

[1] The North American Industry Classification System (NAICS) code is a self-assigned code that best fits a business's primary industry.   For example, barber shops are assigned NAICS code 812111, while beauty salons are assigned NAICS code 812112, and nail salons are assigned NAICS code 812113.

congressional district.  For loans of $150,000 or more, it also included business names and street

addresses, and loan amounts expressed in ranges (not precise values) as follows: $150,000 to

$350,000; $350,000 to $1 million; $1 million to $2 million; $2 million to $5 million; $5 million to

$10 million.  For loans of less than $150,000, the loan-level data also included the precise value

of the PPP loan, but not the business name or street address.

89.   The Press Release explained:

Today's release includes loan-level data, including business names, addresses,
NAICS codes, zip codes, business type, demographic data, non-profit information,
name of lender, jobs supported, and loan amount ranges as follows:
•       $150,000-350,000
•       $350,000-1 million
•       $1-2 million
•       $2-5 million
•       $5-10 million

These categories account for nearly 75 percent of the loan dollars approved. For all
loans below $150,000, SBA is releasing all of the above information except for
business names and addresses.

The data release also includes overall statistics regarding dollars lent per state, loan
amounts, top lenders, and distribution by industry. The loans have reached diverse
communities proportionally, across all income levels and demographics.

In addition, the data provides information regarding the sizes of participating
lenders and participation by community development financial institutions,
minority depository institutions, Farm Credit System institutions, fintechs and other
nonbanks, and other types of lenders. It further contains data showing the reach of
the program in underserved communities, rural communities, historically
underutilized business zones (HUBZones), and participation by religious,
grantmaking, civil, professional, and other similar organizations.

90.   On July 13, 2020, SBA made a determination on the release of PPP individual

borrower information, and issued letters to each Plaintiff (except the Center for Public Integrity,

which received its letter some weeks later).  The letters directed Plaintiffs to SBA's website at

www.sba.gov/ppp.  SBA explained in the letters that portions of the PPP borrower data were being

withheld pursuant to FOIA Exemptions 4 and 6.   5 U.S.C. §§ 552(b)(4) and 552(b)(6).

Specifically, SBA withheld the names and addresses of all borrowers of PPP loans made below $150,000.  SBA also withheld the precise values of all PPP loans worth $150,000 or more.

91.   On July 20, 2020, SBA made a final determination of the release of EIDL borrower information and again issued letters to all Plaintiffs (again, except the Center for Public Integrity, which received its letter some weeks later).  The letters directed Plaintiffs to SBA's website at https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/economic-injury-disaster-loans#section-header-5, and  informed Plaintiffs that SBA was releasing the loan data for all EIDL loans, except that the names and street addresses of sole proprietorships and independent contractors were being withheld pursuant to FOIA Exemption 6.  5 U.S.C. §552(b)(6).

92.   SBA has no responsive records with regard to PPP loans that were approved but quickly repaid and then cancelled.  SBA is notified of a loan cancellation in one of two ways.  Either the lender cancels the loan via E-TRAN, or the lender reports the loan cancellation on Form 1502.  In either case, lenders are not asked for the reason for, or circumstances of, the cancellation, and neither E-TRAN nor Form 1502 provides a mechanism for reporting the reason for, or circumstances of, the cancellation.  Moreover, because PPP loans are made by lenders on a delegated basis and SBA does not interact with borrowers, SBA does not receive information concerning loan cancellations from borrowers.  Thus, if a loan was made, entered into E-TRAN, disbursed, quickly repaid, and then cancelled due to the repayment, while the lender would notify SBA of the cancellation, SBA would have no information—from the lender or the borrower—indicating that the repayment prompted the cancellation.

93.   Similarly, SBA has no responsive records with regard to PPP loans that were approved but not borrowed.  If a loan has been reported to SBA through E-TRAN and subsequently is cancelled, the lender will accomplish the cancellation through E-TRAN, which provides no

mechanism for reporting the reason for, or circumstances of, the cancellation.  If, on the other hand, a lender cancels a loan before the loan has been reported to SBA through E-TRAN, SBA will not receive any information about the loan or its cancellation, much less the reason for, or circumstances of, the cancellation.  And because PPP loans are made by lenders on a delegated basis and SBA does not interact with prospective borrowers, SBA does not receive information concerning loan cancellations from prospective borrowers.  Thus, if a loan was approved but not borrowed and thus cancelled, while the lender under some circumstances would notify SBA of the cancellation, SBA would have no information—from the lender or the prospective borrower—indicating that a prospective borrower's decision not to borrow prompted the cancellation.

**Withholdings Under FOIA Exemption 4**

94.   FOIA Exemption 4 protects against the disclosure of "trade secrets and commercial or financial information [that are] obtained from a person and [are] privileged or confidential."  5 U.S.C. § 552(b)(4).

95.   SBA considers payroll information submitted by businesses that apply for public assistance to be confidential commercial or financial information and has not customarily disclosed this data to the public in any way.  SBA's Standard Operating Procedure ("SOP") regarding Disclosure describes information generally exempt from disclosure and specifically includes payroll information of businesses.  *See* SBA SOP 40 04 3; Appendix C (May 12, 2018), attached as Exhibit Q. Previous versions of this SOP contain similar descriptions. *See* SOP 40 03 3; Appendix 3 (August 4, 2004), attached as Exhibit R.

96.   The maximum amount of a PPP loan is calculated from the borrowing business's average monthly payroll.  The maximum loan amount is generally 2.5 times the average monthly payroll for the 12 months preceding the date the loan is made, up to $10 million.

97.   The methodology to calculate the maximum amount an applicant can borrow through the PPP is established by the CARES Act and explained in Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811 (Apr. 15, 2020). Compensation paid to an employee in excess of an annual salary of $100,000, or any amounts paid to an independent contractor or sole proprietor in excess of $100,000 per year, are not counted in the calculation of average monthly payroll.

98.   Because the CARES Act establishes a clear mathematical relationship between a business's maximum PPP loan amount and its average monthly payroll, knowing a business's PPP loan amount would allow any interested party to calculate the business's average monthly payroll, other than the amount of any salaries over $100,000—for any business that borrowed the full amount for which it was eligible.  Nationwide, many businesses are unlikely to pay any salaries in excess of $100,000.

99.   For self-employed individuals and independent contractors, any interested party could similarly use the PPP loan amount to calculate the individual's average monthly income.

100.   Because Exemption 4 protects a business's payroll information, which can be deduced from the business's PPP loan amount with reasonable confidence, Exemption 4 also protects (a) the identity of the borrower of any PPP loan, where the precise amount of the loan is disclosed, and (b) the precise amount of any PPP loan, where the borrower's identity is disclosed.

101.   For PPP loans of $150,000 or more, SBA disclosed the names and street addresses of the borrowers but withheld the precise amount of their loans—instead providing the loan amounts in five ranges, as follows: $150,000 to $350,000; $350,000 to $1 million; $1 million to $2 million; $2 million to $5 million; $5 million to $10 million.  SBA determined that this provided

the maximum transparency possible while still preserving the borrower's confidential commercial and financial information.

102.   For PPP loans of less than $150,000, SBA disclosed the precise amount of the loans and other information about the loans, but withheld the names and street addresses of the borrowers.   In each case, the withheld information was protected by Exemption 4.   SBA determined that this separate procedure was appropriate for the smallest PPP loans because a significant percentage of these borrowers are sole proprietors, independent contractors, or other individually owned or closely held entities for whom the disclosure of the PPP loan would reveal private financial information protected by Exemption 6.

103.   For PPP loans below $150,000, Exemption 4 authorizes the withholding of the identities of borrowers even where those borrower identities could be released separately from the detailed loan data that has already been published.   The detailed geographic information already released for each loan (city, state, and ZIP code), plus the information about the type of business (NAICS code) would make it possible in many cases to match a list of PPP borrowers with the loan information already released, thereby reconstructing the complete loan information for those PPP loans and allowing an interested party to calculate those businesses' average monthly payrolls with reasonable confidence.

104.   For PPP loans of $150,000 or more, Exemption 4 warrants the withholding of the precise loan amounts even if the borrowers' identities were not explicitly linked to that figure.   If the precise loan amounts were released along with other detailed information about the loans, it would be possible in many cases for an interested party to match that data with the detailed loan information linked to borrower identities in the current releases, thereby reconstructing the

complete loan information for PPP loans and allowing the interested party to calculate those businesses' average monthly payrolls with reasonable confidence.

105. SBA's Exemption 4 withholding of payroll information and loan amount information from which payroll information can be discerned properly protects the interests of the more than 5 million PPP loan borrowers who are not parties to this litigation and who accordingly cannot defend their own interests.  A business's payroll information, including its aggregate average monthly payroll, is generally considered to be confidential and sensitive information.  This information could be used by a business's competitors to gain strategic insights into the size of the business and how much it pays its employees.  Competitors could also use this information regarding a business's employee compensation to more effectively lure away those employees by offering higher compensation.  The information could be used by suppliers or other counterparties to assess the company's profitability, which could affect commercial negotiations.  These harms could result in borrowers being less likely to take loans from the SBA in the future, which would be contrary to the purposes of the CARES Act and SBA's mission of providing financial assistance to small businesses.  Disclosure of commercial information traditionally kept confidential by PPP borrowers, including payroll information, would further undermine the statutory purposes of the CARES Act by threatening further economic injury to small businesses when they are already being harmed as a result of the pandemic, as explained above.

**Withholdings Under FOIA Exemption 6**

106.   FOIA Exemption 6 provides that an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Exemption 6 applies to financial information in business records when the business is individually owned or closely held, and the records would necessarily reveal at least a portion of the owner's personal finances.

107.   To obtain a PPP loan, the borrower must certify "that the uncertainty of current economic conditions makes necessary the loan request to support . . . ongoing operations," and must "acknowledg[e] that [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments." 15 U.S.C. § 636(a)(36)(G)(i).

108.   The certifications required by the CARES Act—that the PPP loan requested is "necessary . . . to support  . . . ongoing operations" given "the uncertainty of current economic conditions" and that the funds loaned will be used for payroll, mortgage payments, lease payments, and utility payments—reveal a portion of the owner's financial situation for businesses that are individually owned or closely held (including independent contractors, self-employed individuals, and sole proprietorships).  For independent contractors and the self-employed, the amount of the PPP loan also reveals the individual borrower's salary with reasonable confidence.  For such businesses, therefore, Exemption 6 applies to the identity of the borrowers.  Revealing the existence of a PPP loan for businesses that are individually owned or closely held would reveal that the owner's financial situation was sufficiently uncertain as to make the PPP loan necessary, and would effectively reveal salary information for independent contractors and the self-employed. It would also reveal to creditors and the general public that the owner had received PPP funds.

109.   The SBA has received FOIA requests from landlords seeking to know whether their tenants received PPP funds.

110.   For PPP loans below $150,000, Exemption 6 exempts from disclosure the names and street addresses of borrowers that are individually owned or closely held businesses.

111.   The SBA has determined from its experience with the small business community that a significant proportion of the small businesses with PPP loans below $150,000—which generally have annual payrolls below $720,000—are individually owned or closely held businesses.  But SBA records do not allow it to determine precisely which borrowers these are.  Although the SBA's electronic files contain a field for "business type," which includes "sole proprietorship" and several forms of corporate ownership, that field does not identify which of the companies are individually owned or closely held, and which are not.  The SBA has therefore withheld the names and addresses of all PPP borrowers with loans below $150,000.

112.   The SBA has also withheld the names and addresses of independent contractors and sole proprietorships receiving EIDL loans, because the disclosure of this financial information would infringe on the privacy of the individual business owners.

113.   Where SBA withheld information under Exemption 6 in response to Plaintiffs' FOIA requests, SBA determined the individuals' privacy interests outweighed any public interest in disclosure.  Although the public has a general interest in knowing who has received public funds through the PPP loan program, that interest does not outweigh the privacy interest in the personal finances of individuals, including the owners of individually owned or closely held businesses.

**************************

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18 day of August 2020.

William Manger