IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WP COMPANY LLC d/b/a THE WASHINGTON POST, BLOOMBERG L.P., DOW JONES & COMPANY, INC., PRO PUBLICA, INC., THE NEW YORK TIMES COMPANY, AMERICAN BROADCASTING COMPANIES, INC. d/b/a ABC NEWS, AMERICAN CITY BUSINESS JOURNALS, CABLE NEWS NETWORK, INC., NBCUNIVERSAL MEDIA, LLC d/b/a NBC NEWS, THE ASSOCIATED PRESS, THE CENTER FOR INVESTIGATIVE REPORTING d/b/a REVEAL,<br><br>      *Plaintiffs,*<br><br>  v.<br><br>U.S. SMALL BUSINESS ADMINISTRATION,<br><br>      *Defendant*. | Case No. 1:20-cv-01240 (*JEB*) |

**SECOND DECLARATION OF WILLIAM MANGER
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION**

1

I, William Manger, hereby declare and state the following, pursuant to the provisions of 28 U.S.C. §1746:

1.      I am currently employed as Chief of Staff in the Office of the Administrator and as the Associate Administrator for the Office of Capital Access at the U.S. Small Business Administration ("SBA"). On August 18, 2020, I submitted a declaration in the above captioned matter in which I described my position at SBA and my professional duties at paragraphs 1-3 (Doc. 15) ("First Declaration"). I hereby incorporate those paragraphs into this declaration.

2.      I make this declaration on the basis of my personal knowledge and information made available to me in the course of performing my duties and responsibilities as Chief of Staff and as Associate Administrator.

3.      I have read Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment and accompanying declaration.

## I. Withholdings Under FOIA Exemption 4

### A. PPP Loan Amounts Would Reveal Payroll with Reasonable Confidence

4.      As I explained in my First Declaration at paragraphs 94 through 105, revealing both borrower names and precise PPP loan amounts would reveal payroll with reasonable confidence. Plaintiffs' argument to the contrary rests on two ill-supported assumptions.

5.      First, Plaintiffs assume that PPP borrowers have not borrowed the maximum amount available to them. That assumption is undercut by the strong economic incentive that borrowers had to borrow the maximum amount and by the application form that borrowers completed.

6. The severe economic distress resulting from the pandemic and the overwhelming demand for PPP funding support the conclusion that borrowers applied for and received the maximum loan amount for which they were eligible.

7. Borrowers had an incentive to request the maximum amount they could. Any portion of the loan that is forgiven does not have to be repaid, and any unforgiven portion isrepaid at a very low interest rate (1 percent). Many borrowers faced dire business conditions and were in need of the PPP funds to survive and maintain their payrolls. For example, as reported by MetLife & U.S. Chamber of Commerce Small Business Coronavirus Impact Poll on June 3, 2020, nearly a quarter (23%) of small businesses reported temporarily closing their business entirely during the COVID-19 pandemic. https://www.uschamber.com/sites/default/files/coronavirus_smallbusinessreport_june_2020.pdf In addition, the Census Bureau's Small Business Pulse Survey shows that from late April through May, a vast majority of firms surveyed—over 80 percent—indicated that the COVID-19 pandemic had a largely or moderately negative effect on the their business. *See* https://portal.census.gov/pulse/data/. Other business condition indicators show the historic nature of the downturn. For example, the Aruoba-Diebold-Scotti Business Conditions Index reached a low point in its history in April of this year. The index tracks a variety of economic indicators such as initial unemployment claims, payroll employment, and personal income. For context, the index was approximately -4 during the worst of the Great Recession. In April, the index hit a new low of approximately -28. *See* https://www.philadelphiafed.org/research-and-data/real-time-center/business-conditions-index/. Another frequently cited index, The Johnson Redbook Retail Sales index, paints a similar picture in the retail market. The month of April saw a historic collapse in retail sales, and the index captures this with the largest decline it its history.

8. These surveys and indices all support SBA's conclusion that PPP borrowers were unlikely to borrow less than the maximum amount when applying for PPP loans.

9. Moreover, the borrower application, in specifying how to calculate the loan request amount, steered borrowers to the maximum loan amount for which they were eligible. The form contains a field for "Average Monthly Payroll" and states that the "Average Monthly Payroll" amount "x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request." This is the method for calculating the maximum loan amount specified in the Interim Final Rule. *See* Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811 (Apr. 15, 2020) ("April IFR"). Thus, the application itself invites borrowers to request the maximum loan amount. A borrower would need to affirmatively choose to deviate from the specified formula to not reveal its payroll.

10. Additionally, under current law, each borrower would receive only one PPP loan under 15 U.S.C. 636(a)(36)(G)(i)(IV) (requiring certification that "during" specified period borrower "has not received amounts under this subsection for the same purpose and duplicative of amounts applied for or received under a covered loan"). *See also* April IFR, 85 Fed. Reg. at 20814 (¶ III.2.t.vi) (applicant must certify that it has not "receive[d] another loan under" program). A borrower therefore did not have an incentive to seek a smaller-than-necessary loan at the outset, because getting another PPP loan was not an option if conditions deteriorated even further.

11. Plaintiffs' second assertion that SBA made an unsupported assumption is that PPP borrowers have employees with salaries that exceed $100,000. However, data support the conclusion that most small businesses—and, by implication, most PPP borrowers—do not pay their employees more than $100,000. Based on available W-2 data, the Department of the

Treasury estimates that 77% of all small businesses do not have any employees whose salary exceeds $100,000.  And data for the smallest businesses indicate that their salaries generally fall well below $100,000.  In 2018, the median income for self-employed individuals at their own incorporated businesses was $51,816, and for self-employed individuals at their own unincorporated firms, the median income was $26,084.  [https://cdn.advocacy.sba.gov/wp-content/uploads/2020/06/04144224/2020-Small-Business-Economic-Profile-US.pdf](https://cdn.advocacy.sba.gov/wp-content/uploads/2020/06/04144224/2020-Small-Business-Economic-Profile-US.pdf).

12.    Thus, available data weigh against Plaintiffs' assumption that the majority of PPP borrowers generally have employees whose salaries exceed $100,000.

**B. The PPP Application Form Assured Confidentiality of Payroll Information**

13.     To understand in proper context the application form language that lists "names of borrowers" and "the amount of the loan" as information that would be "automatically released," one must account for the form's statement that "[p]roprietary data on a borrower would not routinely be made available to third parties" as well as SBA's Standard Operating Procedure ("SOP") regarding disclosure, which includes among information generally exempt from disclosure the payroll information of businesses. *See* SBA SOP 40 04 3; Appendix C (May 12, 2018).

14.     Consistent with its established policy as reflected in its SOP, SBA would not release borrowers' payroll information.  The disclosure SBA already has made is consistent with the application and the SOP because it does not allow payroll information to be deduced with reasonable confidence.

15.     SBA's longstanding policy is payroll information of businesses generally is exempt from disclosure.  *See* SBA SOP 40 04 3; Appendix C (May 12, 2018).  As described in my previous declaration filed in conjunction with Defendant's Motion for Summary Judgment, versions of this SOP dating to at least 2004 contain similar descriptions.  *See* SOP 40 03 3, Appendix 3 (August 4, 2004).

16.     Moreover, the circumstances under which the PPP application form was created further undermine any suggestion that the application form should be interpreted to override longstanding SBA policy against disclosure of payroll data.

17.     The PPP application form was created in, and reviewed and cleared by the appropriate agencies within the Executive Branch under, an extraordinarily short timeframe, because of the need for immediate action to provide economic relief to small businesses

nationwide adversely impacted by the Coronavirus Disease 2019 (COVID-19). President Trump signed the CARES Act into law on March 27, 2020, and participating lenders began accepting PPP loan applications on or about April 3, 2020. During this approximately one-week period, to speed the process of getting much needed funding to small businesses in need, the PPP application form was substantially derived from the existing SBA Form 1919 application for the 7(a) business loan program. Most pertinent here, Form 1919's disclosure statement, which stated that certain borrower information would be "automatically released" to the public, was substantially incorporated into the PPP loan application form, as a comparison of the language between the two forms shows. SBA Form 1919 states, in relevant part:

> Freedom of Information Act (5 U.S.C. 552) -- This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties.

*See* https://www.sba.gov/sites/default/files/2018-03/SBA-1919.pdf. The PPP loan application form similarly provides:

> Freedom of Information Act (5 U.S.C. 552) – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties.

*See* https://www.sba.gov/document/sba-form-2483-paycheck-protection-program-borrower-application-form. The bolded, italicized language is identical in both loan

applications. Only the first four words of the disclosure on the PPP loan application differs from the 7(a) business loan application. Those four words are prefatory and do not change the substance of the disclosures.

18.  That the PPP loan disclosure language refers to items that apply only to 7(a) program loans, and not to PPP loans—such as collateral, which is not required, and general loan terms and maturity, which are established by statute—further undermines any suggestion that the Form 1919-derived disclosure language should be interpreted to override the longstanding SBA policy against disclosure of payroll data.

### C. Withheld Loan Data Are Not Already in the Public Domain

19.  Plaintiffs assert that non-profit borrower loan data should be released as the data are already in the public domain. In particular, Plaintiffs assert that IRS Form 990, which is subject to public inspection, provides the same information found in the borrower loan data. This is not an accurate characterization of what is required by the Internal Revenue Code and what information is required in the form itself. I am familiar with 26 U.S.C. § 6033 and 26 C.F.R. 1.6033-2 through consultations with the U.S. Department of the Treasury during the implementation and administration of PPP. For non-profit borrowers, information reported on IRS Form 990 does include the information at issue here.

20.  To begin, not all non-profits are required to file IRS Form 990. Churches and other places of worship (including synagogues and mosques) and other non-profit religious organizations are excepted from the requirement to file a Form 990. 26 U.S.C. § 6033(a)(3)(A). Also excepted from the requirement to file a Form 990 are primary and secondary schools that are affiliated with or operated by religious organizations and places of

worship. 26 C.F.R. 1.6033-2(g)(1). Non-profit organizations not required to report on IRS Form 990 received PPP loans; thus, their payroll information is not already in the public domain.

21. In any event, the information reported by a nonprofit required to report on IRS Form 990 is not the same information that would be revealed by disclosure of loan-level PPP data.  Form 990 requires only that some tax-exempt organizations provide the compensation, benefits, and other payments made during the calendar year or fiscal year some, but not all, of the organizations' employees.  Only officers, directors, and certain other well-paid employees' compensation, benefits, and other payments are reported on Form 990. 26 U.S.C. § 6033(b)(7).  In contrast, the PPP loans are based on the borrower's average payroll for all of its employees.

22. Finally, non-profits comprise only a portion of the businesses that received a PPP loan.  Thus, plaintiffs' argument—even if accepted—by its own terms would not establish that the loan data have been made public for borrowers other than non-profits.

### D.  SBA Has Fulfilled FFATA Disclosure Requirements

23. Plaintiffs assert that the Federal Funding Accountability and Transparency Act of 2006 (FFATA) obliges SBA to make public the PPP loan data that they seek for loans that equal or exceed $25,000. However, FFATA does not override SBA's Exemption 4 and Exemption 6 withholding.

24. FFATA was amended in 2014 by the Digital Accountability and Transparency Act ("DATA Act") o "expand the Federal Funding Accountability and Transparency Act of 2006 to increase accountability and transparency in Federal spending, and for other purposes." Public Law No. 113-101.  Section 7 of FFATA, as amended by the DATA Act, states:

> Nothing in this Act shall require the disclosure to the public of— (1) information that would be exempt from disclosure under section 552 of title 5, United States

> Code (commonly known as the 'Freedom of Information Act'); or (2) information protected under section 552a of title 5, United States Code (commonly known as the 'Privacy Act of 1974'), or section 6103 of the Internal Revenue Code of 1986.

Pub. L. No. 113-101, § 3.

25. FFATA, as amended by the DATA Act, explicitly authorizes SBA to withhold information from the public under FOIA Exemptions 4 and 6.

## II. Withholdings Under FOIA Exemption 6

### A. Borrowers Did Not Waive Their Rights Under the Privacy Act

26. Plaintiffs argue that SBA's withholdings under FOIA Exemption 6 are unjustified because the loan application forms expressly informed PPP and EIDL borrowers that their names and loan amounts would be made public. However, properly understood, the application forms instead assured confidentiality of the data that SBA has withheld.

27. As noted above, when understood in the context of SBA policy reflected in SBA's SOP, the PPP application form did not advise applicants that they would waive their Privacy Act rights in their proprietary data, including information from which their payroll data can be calculated with reasonable confidence; rather, the form assured the confidentiality of such data.

28. Similarly, sole proprietors and independent contractors who obtained EIDL loans and grants did not waive their Privacy Act rights. Rather, the application form assured confidentiality. As Plaintiffs note, the EIDL application form does state that FOIA generally requires disclosure of "names of borrowers" and "loan amounts at maturity, the collateral pledged, and the general purpose of loans." However, the EIDL application form goes on to state that "[w]e do not routinely make available to third parties . . . information that would cause competitive harm or constitute a clearly unwarranted invasion of personal privacy." *See* https://www.sba.gov/sites/default/files/articles/SBA_Form_3501_Economic_Injury_Disaster_Lo

an_Application.pdf.  Thus, like the PPP application form, the EIDL application form assured borrowers that the information that SBA now is withholding would remain confidential.

### B. Public Interest in Release Does Not Outweigh Borrowers' Privacy Interest

29. Plaintiffs argue that there is an overriding public interest in the release of the loan data due to the potential for and allegations of fraud, conflict of interest, and inequitable treatment with respect to implementation of the CARES Act. However, the public interest that Plaintiffs describe would not be meaningfully advanced by rejecting SBA's Exemption 6 withholding here, in light of the data already available to Plaintiffs; ongoing efforts by SBA and other agencies to address waste, fraud, and abuse in PPP and EIDL administration; and Plaintiffs' avenues to report on purported waste, fraud, and abuse based on the data to which they already have access.

30. Plaintiffs already have the information that they need to advance the public interest that they say they wish to vindicate.  Plaintiffs know, among other information, the identity of the borrower and the approximate loan value (within a range) for all PPP loans that equal or exceed $150,000—nearly 75 percent of the PPP loan dollars that lenders have approved. They also know, among other information, the identity of the borrower and the exact loan value for all EIDL loans except those borrowed by sole proprietors and independent contractors. These data allow Plaintiffs to assess whether named borrowers have received loans for which Plaintiffs or other members of the public believe the borrowers are ineligible.  Therefore, Plaintiffs' asserted public interest in knowing who borrowed under these programs and the loan value (or, in the case of PPP loans, the approximate loan value) already has been satisfied by the information that SBA has disclosed.

31. What is more, Plaintiffs' access to the withheld information would not fulfill a need. SBA has committed to review of all PPP loans greater than $2 million—in addition to other PPP loans, as necessary—to ensure that PPP benefits only eligible borrowers.

32. This ongoing government work provides Plaintiffs with multiple avenues to make reports based on the data to which they already have access.

### III. FOIA Correspondence Between SBA And Plaintiffs Described In First Declaration

33. SBA filed as Exhibit **A** on August 18, 2020 (Doc. 15-1), a true and correct copy of SBA's FOIA correspondence with the Washington Post, described in Paragraphs 18 through 22 of the First Declaration.

34. SBA filed as Exhibit **B** on August 18, 2020 (Doc. 15-1), a true and correct copy of SBA's FOIA correspondence with Bloomberg News, described in Paragraphs 23-34 of the First Declaration.

35. SBA filed as Exhibit **C** on August 18, 2020 (Doc. 15-1), a true and correct copy of SBA's FOIA correspondence with Dow Jones, described in Paragraphs 35-41 of the First Declaration.

36. SBA filed as Exhibit **D** on August 18, 2020 (Doc. 15-1), a true and correct copy of SBA's FOIA correspondence with ProPublica, described in Paragraphs 42-47 of the First Declaration.

37. SBA filed as Exhibit **E** on August 18, 2020 (Doc. 15-1), a true and correct copy of SBA's FOIA correspondence with the New York Times, described in Paragraphs 48-50 of the First Declaration.

38. SBA filed as Exhibit **F** on August 18, 2020 (Doc. 15-1), a true and correct copy of SBA's FOIA correspondence with ACBJ, described in Paragraphs 51-55 of the First Declaration.

39. SBA filed as Exhibit **G** on August 18, 2020 (Doc. 15-1), a true and correct copy of SBA's FOIA correspondence with ABC News, described in Paragraphs 56-58 of the First Declaration.

40. SBA filed as Exhibit **H** on August 18, 2020 (Doc. 15-1), a true and correct copy of SBA's FOIA correspondence with CNN, described in Paragraphs 59-62 of the First Declaration.

41. SBA filed as Exhibit **I** on August 18, 2020 (Doc. 15-1), a true and correct copy of SBA's FOIA correspondence with the Associated Press, described in Paragraphs 63-68 of the First Declaration.

42. SBA filed as Exhibit **J** on August 18, 2020 (Doc. 15-1), a true and correct copy of SBA's FOIA correspondence with NBC News, described in Paragraphs 69-77 of the First Declaration.

43. SBA filed as Exhibit **K** on August 19, 2020 (Doc. 16), a true and correct copy of SBA's FOIA correspondence with Center for Investigative Reporting (d/b/a Reveal), described in Paragraphs 78-81 of the First Declaration.

44. SBA filed as Exhibit **M** on August 18, 2020 (Doc. 15-2), a true and correct copy of SBA's July 13, 2020 letters, described in Paragraph 90 of the First Declaration.

45. SBA filed as Exhibit **N** on August 18, 2020 (Doc. 15-2), a true and correct copy of SBA's July 20, 2020 letters, described in Paragraph 91 of the First Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of September 2020.

*William Manger*

William Manger