**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WP COMPANY LLC d/b/a THE WASHINGTON POST, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. SMALL BUSINESS ADMINISTRATION, <br><br> *Defendant*. | Civil Action No. 20-1240 (JEB) |
| CENTER FOR PUBLIC INTEGRITY, <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. SMALL BUSINESS ADMINISTRATION, <br><br> *Defendant*. | Civil Action No. 20-1614 (JEB) |

**DEFENDANT'S MOTION FOR STAY**

Defendant United States Small Business Administration hereby respectfully moves for (1) a stay of this Court's Order of November 5, 2020 until December 7, 2020, or, if Defendant files a notice of appeal by that date, pending appeal; and (2) an immediate administrative stay extending through this Court's ruling on the instant motion to stay; and (3) should this Court deny the instant motion to stay, an administrative stay further extending through disposition by the United States Court of Appeals for the District of Columbia Circuit of any motion for stay pending appeal filed in that Court.

The reasons for this motion are further set forth in the Memorandum of Points and

-2-

Authorities in support, filed herewith.

A proposed order regarding the motion for stay is filed herewith.

Under Local Civil Rule 7(m), counsel for SBA conferred with Counsel for Plaintiffs in

Case No. 20-1240, and in Case No. 20-1614, before filing this motion.  Counsel for Plaintiffs

stated that Plaintiffs oppose the requested relief.

Dated:  November 12, 2020                         Respectfully submitted,

JEFFREY BOSSERT CLARK                    */s/  Indraneel Sur*
Acting Assistant Attorney General             INDRANEEL SUR
                                                              JAMES BICKFORD
ELIZABETH J. SHAPIRO                        Trial Attorneys
Deputy Branch Director
                                                              Federal Programs Branch,
                                                              Civil Division
                                                              United States Department of Justice
                                                              P.O. Box 883
                                                              Washington, D.C. 20044
                                                              Telephone:  (202) 616-8448
                                                              E-mail:      Indraneel.Sur@usdoj.gov

                                                              *Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WP COMPANY LLC d/b/a THE
WASHINGTON POST, *et al.*,

       *Plaintiffs*,

         v.                            Civil Action No. 20-1240 (JEB)

U.S. SMALL BUSINESS
ADMINISTRATION,

       *Defendant*.

CENTER FOR PUBLIC INTEGRITY,

       *Plaintiff*,

         v.                            Civil Action No. 20-1614 (JEB)

U.S. SMALL BUSINESS
ADMINISTRATION,

       *Defendant*.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S**
**MOTION FOR STAY**
**AND FOR IMMEDIATE ADMINISTRATIVE STAY**

Dated: November 12, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

INDRANEEL SUR
JAMES BICKFORD
Trial Attorneys

Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883
Washington, D.C. 20044
Telephone:  (202) 616-8448
E-mail:     Indraneel.Sur@usdoj.gov

*Counsel for Defendant*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

STANDARD OF REVIEW ..................................................................................................... 3

ARGUMENT ........................................................................................................................... 4

I.      SBA will be Irreparably Harmed Absent a Stay .................................................... 4

II.     Plaintiff Will Not Be Substantially Harmed By a Stay ......................................... 5

III.    The Public Interest Supports Granting A Limited Stay. ....................................... 6

IV.    SBA Is Likely to Succeed on the Merits of Its Appeal ......................................... 7

         A.    SBA's Exemption 4 Contention presents a Serious Legal Question for Appeal .......................................................................................................... 7

         B.    SBA's Exemption 6 Contention presents a Serious Legal Question for Appeal ......................................................................................................... 10

CONCLUSION ..................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Al-Anazi v. Bush,*
  370 F. Supp. 2d 188 (D.D.C. 2005) ............................................................ 4

*Comm. On the Judiciary U.S. House of Reps. v. Miers,*
  575 F. Supp. 2d 201 (D.D.C. 2008) ..................................................... 5, 6

*Consumers' Checkbook Ctr. For the Study of Servs. v. Dep't of Health &*
  *Human Servs.,*
  554 F.3d 1046 (D.C. Cir. 2009) ................................................. 7, 10, 11

*Ctr. for Int'l Envt'l Law v. Office of U.S. Trade, Rep.,*
  240 F. Supp. 2d 21 (D.D.C. 2003) ............................................................ 5

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,*
  217 F. Supp. 2d 58 (D.D.C. 2002) ............................................................ 5

*Cuomo v. U.S. Nuclear Regulatory Comm'n,*
  772 F.2d 972 (D.C. Cir. 1985) ........................................................... 3, 4

*Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
  489 U.S. 749 (1989) ........................................................................... 6, 7

*Dunlap v. Presidential Advisory Comm'n on Election Integrity,*
  319 F. Supp. 3d 70 (D.D.C. 2018) ............................................................ 3

*Food Marketing Institute v. Argus Leader Media,*
  139 S. Ct. 2356 (2019) ............................................................................. 9

*In re Sealed Case (Medical Records),*
  381 F.3d 1205 (D.C. Cir. 2004) ............................................................... 4

*Irons v. FBI,*
  811 F.2d 681 (1st Cir. 1987) .................................................................... 4

*John Doe Agency, et al. v. John Doe Corp.,*
  488 U.S. 1306 (1989) ........................................................................... 3, 5

*Judicial Watch, Inc. v. Dep't of Justice,*
  432 F.3d 366 (D.C. Cir. 2005) ................................................................. 4

*Light v. Dep't of Justice*,
    968 F. Supp. 2d 11 (D.D.C. 2013) ........................................................................... 8

*Maydak v. U.S. Dep't of Justice*,
    218 F.3d 760 (D.C. Cir. 2000) ................................................................................. 8

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ................................................................................. 8

*Mobley v. CIA*,
    806 F.3d 568 (D.C. Cir. 2015) ................................................................................. 1

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
    879 F.2d 873 (D.C. Cir. 1989) ............................................................................... 10

*People for the Am. Way Found. v. U.S. Dep't of Educ.*,
    518 F. Supp. 2d 174 (D.D.C. 2007) ......................................................................... 5

*Population Inst. v. McPherson*,
    797 F.2d 1062 (D.C. Cir. 1986) ............................................................................... 4

*Providence Journal Co. v. FBI*,
    595 F.2d 889 (1st Cir. 1979) ............................................................................... 4, 5

*Quiñón v. FBI*,
    86 F.3d 1222 (D.C. Cir. 1996) ................................................................................. 6

*Shapiro v. U.S. Dep't of Justice*,
    No. 13-cv-555, 2016 WL 3023980 (D.D.C. May 25, 2016)................................... 4, 7

*U.S. Dep't of Def. Dep't of Military Affairs v. FLRA*,
    964 F.2d 26 (D.C. Cir. 1992) ............................................................................... 11

*U.S. Dep't of Justice v. Landano*,
    508 U.S. 165 (1993)................................................................................................ 8

*United States v. Bookhardt*,
    277 F.3d 558 (D.C. Cir. 2002) ................................................................................. 1

*United States v. Philip Morris Inc.*,
    314 F.3d 612 (D.C. Cir. 2003) ............................................................................. 4, 5

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977) ............................................................................. 3, 7

iii

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) ................................................................................................ 8

**Statutes**

5 U.S.C. § 552(b)(4) ...................................................................................................................... 7

5 U.S.C. § 552(b)(6) .................................................................................................................... 10

**Rules**

Fed. R. App. P. 4(a)(1)(B)(ii) ........................................................................................................ 1

## INTRODUCTION

The U.S. Small Business Administration (SBA) is considering whether to appeal from this Court's Order of November 5, 2020, in which the Court directed SBA under the Freedom of Information Act ("FOIA") to "release the names, addresses, and precise loan amounts of all individuals and entities that obtained COVID-related loans pursuant to the [PPP] and [EIDL] by November 19, 2020[.]" November 5 Order ¶ 5, ECF No. 22. To preserve SBA's right to appeal, and to avoid irreparable harm to SBA and to privacy and business confidentiality interests of the millions of individuals and businesses nationwide who obtained assistance through the PPP and EIDL in response to the pandemic, SBA respectfully requests that the November 5 Order be stayed until Monday, December 7, 2020, or, if SBA files a notice of appeal by that date, pending appeal. Such relief would provide the Acting Solicitor General of the United States additional time to consider whether to authorize an appeal. "[A]ny appeal of a decision adverse to the government must be approved by the Solicitor General[.]" *United States v. Bookhardt*, 277 F.3d 558, 563 n.6 (D.C. Cir. 2002). Correspondingly, where, as here, "one of the parties" in a civil case "is a United States agency, a notice of appeal must be filed within 60 days after entry of the judgment or order appealed." *Mobley v. CIA*, 806 F.3d 568, 576 (D.C. Cir. 2015) (citing Fed. R. App. P. 4(a)(1)(B)(ii)). The government would thus ordinarily have until January 5, 2021 to determine whether to appeal.

SBA meets all the traditional requirements for the requested stay, which would maintain the status quo. At the outset, disclosure on the November 19, 2020 compliance date, before SBA has even had opportunity to finish deliberating on whether to appeal, would moot any such appeal. That is, SBA, and the many individual borrowers and businesses across the nation whose interests the agency legitimately seeks to protect against unwarranted intrusion in this case, will be

1

*irreparably* harmed if the information withheld is released pending appeal.  Once the information is disclosed, it cannot be recalled, and the confidentiality of the PPP and EIDL information in dispute would be lost for all time.  Furthermore, Plaintiffs would not be substantially injured by a stay.  The PPP currently stands closed to new applications, making the data about PPP borrowers a question of historical interest that can be amply examined once an appeal is decided.  A stay will also serve the public interest, which must include the privacy interests of the millions of ordinary individuals and businesses that obtained PPP and EIDL assistance in the midst of the pandemic.

Moreover, SBA is likely to succeed on the merits of its appeal.  At a minimum, SBA's arguments raise serious legal questions for appeal, which is all that is required where, as here, the balance of harms strongly favors a stay.  There is a serious legal question, for example, about the correct Exemption 6 balance in this case between borrower privacy and the perceived need for enhanced public disclosure, and there would be fair ground for the SBA to contend that the D.C. Circuit should draw that balance differently from this Court.  There are likewise serious questions with respect to disclosure under Exemption 4.

Under Local Civil Rule 7(m), counsel for SBA conferred with Counsel for Plaintiffs in Case No. 20-1240, and in Case No. 20-1614, before filing this motion.  Counsel for Plaintiffs in both cases stated that Plaintiffs oppose the requested relief.

SBA accordingly requests that the Court stay its November 5 Order until Monday, December 7, 2020 or, if SBA files a notice of appeal by that date, pending appeal.  SBA further requests that the Court enter an immediate administrative stay extending through this Court's ruling on the instant motion to stay and, should this Court deny the motion, further extending through the D.C. Circuit's ruling on a motion for stay filed in that Court.

## STANDARD OF REVIEW

"An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant."  *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977).  Accordingly, a party seeking a stay pending appeal must show that four factors weigh in favor of a stay: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."  *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (*per curiam*); *see, e.g.*, *John Doe Agency, et al. v. John Doe Corp.*, 488 U.S. 1306, 1308-09 (1989) (Marshall, J., in chambers) (staying FOIA disclosure order of lower court pending disposition of cert petition where, *inter alia*, "fact that disclosure would moot that part of the [challenged] decision requiring disclosure of the *Vaughn* index would also create an irreparable injury").

"A party does not necessarily have to make a strong showing with respect to the first factor (likelihood of success on the merits) if a strong showing is made as to the second factor (likelihood of irreparable harm)."  *Dunlap v. Presidential Advisory Comm'n on Election Integrity* ("*Dunlap II*"), 319 F. Supp. 3d 70, 83 (D.D.C. 2018) (citing *Cuomo*, 772 F.2d at 974).  Furthermore, "courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms strongly favors a stay."  *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193 n.5 (D.D.C. 2005) (citations omitted); *see Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986); *see also Shapiro v. U.S. Dep't of Justice*, No. 13-cv-555, 2016 WL 3023980, at *7-8 (D.D.C. May 25,

2016).

# ARGUMENT

## I.        SBA will be Irreparably Harmed Absent a Stay

The requested stay, which would enable SBA and the Solicitor General to determine whether to appeal, is warranted to prevent irreparable harm to SBA's appellate rights.  Where, as here, an order directs an agency to produce documents the agency asserts are legally exempt or privileged against disclosure, compliance with the order "mak[es] the issue . . . effectively moot."  *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1210 (D.C. Cir. 2004) (Garland, J.) (quoting *United States v. Philip Morris Inc.*, 314 F.3d 612, 619 (D.C. Cir. 2003)).  That is because compliance "let[s] the cat out of the bag, without any effective way of recapturing it if the district court's directive [is] ultimately found to be erroneous."  *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting *Irons v. FBI*, 811 F.2d 681, 683 (1st Cir. 1987)).  The government's right to appeal from this Court's November 5 Order thus "will become moot" once SBA "surrender[s]" the PPP and EIDL information over which SBA has asserted exemptions from disclosure under FOIA, because the ordered release will cause "confidentiality [to] be lost for all time[,]" thereby "utterly destroy[ing] the status quo[.]"  *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979).  The resulting harm to SBA will be "irreparabl[e]."  *Id.*

For that reason, "[p]articularly in the FOIA context, courts have routinely issued stays where the release of documents would moot a defendant's right to appeal."  *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007) (citing *John Doe Agency*, 488 U.S. at 1308-09); *see also Ctr. for Int'l Envt'l Law v. Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003); *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002).

Importantly, the irreparable harm that would result from compelled release of the information withheld here would not only harm SBA, but it would also harm the many individuals and businesses whose loans are at issue.  Borrowers are already suffering from the dramatic decrease in economic activity the pandemic inflicted.  It would contradict the purposes of the CARES Act to subject them to further risk—in particular, the risk of competitors and other interested parties inferring payroll information from loan amounts and attributing that information to particular businesses, and using that information to the disadvantage of borrowers.  *See* Manger Decl. ¶ 105, ECF No. 14-1 (1st Manger Decl.).

## II.        Plaintiffs Will Not Be Substantially Harmed By a Stay.

Furthermore, a stay is appropriate because the "issuance of the stay will not cause substantial harm to other parties[.]"  *Comm. On the Judiciary U.S. House of Reps. v. Miers*, 575 F. Supp. 2d 201, 203 (D.D.C. 2008) (quoting *Philip Morris, Inc.*, 314 F.3d at 617).  Here, the "granting of a stay" would "be detrimental" to Plaintiffs "only to the extent that it postpones the moment of disclosure assuming [they] prevail[] by whatever period of time may be required for [the D.C. Circuit] to hear and decide [any] appeal[]."  *See Providence Journal*, 595 F.2d at 890.

Such a postponement would not result in significant harm to the Plaintiffs here.  The PPP closed to new applications on August 8, 2020, and Plaintiffs have already received extensive descriptions and data about the PPP and EIDL loans and assistance.  Indeed, numerous news organizations, including Plaintiffs, have already published articles about SBA's lending activities under the CARES Act.  Because the PPP loans have already been made and new applications are not being considered, many of the records are mainly of historical interest, and that interest can be vindicated at the end of any appeal. *Cf. Comm. on the Judiciary*, 575 F. Supp. 2d at 208 (current Congress would suffer "substantial harm" if it were denied information

prior to its expiration).

In that regard, although Plaintiffs in Case No. 20-1240 pressed for a truncated summary judgment briefing schedule based on the assertion that the information sought was necessary "*before the November 2020 general election* so that voters will be able to consider the information released when they cast their ballot," (No. 20-1240, ECF No. 10, at 2 (June 29, 2020)), November 2, 2020 has now passed.  Postponing release to allow for orderly D.C. Circuit adjudication therefore cannot in any way affect how voters "cast their ballot" in that general election.

**III.      The Public Interest Supports Granting A Limited Stay.**

The public interest also supports granting the requested interim relief.  SBA fully acknowledges the importance of the public interest served by adherence to FOIA. Nevertheless, the public interest protected by the FOIA "is that in 'official information that sheds light on an *agency*'s performance of its statutory duties.'"  *Quiñón v. FBI*, 86 F.3d 1222, 1231 (D.C. Cir. 1996) (emphasis added) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  But until the D.C. Circuit can adjudicate SBA's appeal, it would not serve the public interest to compel disclosure of the information withheld, given that the records contain, *inter alia*, information about *millions* of individuals and businesses that are not parties to this action—the PPP borrowers and recipients of EIDL assistance—and given also that the information released (including names, addresses, and loan amounts) could be exploited to the detriment of those borrowers.  *See, e.g.*, 1st Manger Decl. ¶ 109.  Those individuals and businesses have privacy and commercial confidentiality interests in the disputed records, which would be best served by allowing for appellate review of whether that information is subject to disclosure under the unusual facts of this action, which arises from the aftermath of the COVID-19 public health emergency.  After all, "information

about private citizens . . . that reveals little or nothing about an agency's own conduct" does not serve a relevant public interest under FOIA. *Consumers' Checkbook Ctr. For the Study of Servs. v. Dep't of Health & Human Servs.,* 554 F.3d 1046, 1051 (D.C. Cir. 2009) (quoting *Reporters Comm.*, 489 U.S. at 773).

**IV.     SBA Is Likely to Succeed on the Merits of Its Appeal**

Furthermore, if SBA appeals, it is likely to prevail on at least one—if not both—of the merits issues that would arise on appeal from this Court's November 5 Order. A stay is thus warranted in recognition of the significant possibility that the D.C. Circuit might reach a different conclusion on at least one of the "serious legal question[s]" presented here. *Holiday Tours*, 559 F.2d at 844; *see, e.g.*, *Shapiro*, 2016 WL 3023980, at \*8 (where, as here, FOIA disclosure order would moot FBI's right to appeal, merits analysis required only "a substantial question for appeal," because "it makes little sense to make the issuance of a stay contingent on the [District] Court's determination that its own ruling was likely wrong").

**A.     SBA's Exemption 4 Contention Presents a Serious Legal Question for Appeal**

The case presents a serious legal question about SBA's invocation of Exemption 4—which protects "commercial or financial information obtained from a person and privileged or confidential[,]" 5 U.S.C. § 552(b)(4)—"to withhold the precise amounts of all PPP loans of $150,000 or more, as well as the names and addresses of all borrowers of PPP loans of less than that figure." Memorandum Opinion, ECF No. 23, at 11 (Nov. 5, 2020) ("Mem. Op.").

SBA's declarations invoked Exemption 4 by showing "that the information withheld logically falls within the claimed exemption[.]" *Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 22 (D.D.C. 2013) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). That is, SBA's "justification for invoking a FOIA exemption" was "sufficient" by "appear[ing] 'logical'

or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).   Following a "well established" pathway, the agency met its evidentiary burden through the declarations of William Manger, Chief of Staff in the Office of the Administrator and the Associate Administrator for the Office of Capital Access at SBA, who explained the agency's "grouping" of the records into "*categories* and offering *generic* reasons for withholding the documents in each category." *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 763, 765 (D.C. Cir. 2000) (emphasis added).   The agency's approach was also consistent with Supreme Court precedent adopting an objective test, albeit in the slightly different context—asking whether "an implied assurance of confidentiality fairly can be inferred[,]" based on "*generic* circumstances" surrounding the communication between an informant (in a criminal case) and the government that would "*characteristically* support an inference of confidentiality[.]"   *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 173, 177, 179 (1993) (emphasis added).

As SBA explained through its unrebutted declarations, under its longstanding policy reflected in its Standard Operating Procedure, borrower payroll information is confidential and generally exempt from disclosure.   Viewed in context, SBA explained, it did not intend to disclose PPP loan amounts and borrower names:   The PPP application form language substantially derived from the pre-existing Section 7(a) program application—listing "names of borrowers" and loan amount as information that would be "automatically released"—did not override the SBA's longstanding policy against disclosure of payroll data.   Indeed, by referring to items applicable only to 7(a) loans and not to PPP loans—such as collateral, which is not required for a PPP loan, and general loan terms and maturity, which are set by the CARES Act—the text of the form itself undermines the suggestion that the disclosure set aside the SBA's commitment to protecting the confidentiality of payroll information.   *See* 2d Manger Decl., ECF No. 20-2 ¶¶ 13-18; 1st Manger

Decl. ¶¶ 94-105.  Although this Court reached a contrary conclusion about the "natural reading" of the application form (Mem. Op. 20, 23-27), whether the SBA's unrebutted declarations met its burden as a matter of law is at least a serious question that SBA should be permitted to present to the D.C. Circuit on appeal.

Moreover, although the Manger declaration explained the analytical connection between the PPP loan amount and a borrower's average monthly payroll, the Court faulted that rationale based on its perception that SBA's assumptions—"1) that a [PPP] borrower took out a loan for the maximum amount allowed; and 2) that a PPP borrower would pay few if any of its employees more than $100,000"—were not "*necessarily* true for *any* given borrower."  Mem. Op. 14-15 (emphasis added) (citation omitted).  The Court remarked that there were incentives for certain borrowers to seek a loan amount below the maximum, and that there were some PPP borrowers that did pay employees more than $100,000 a year (for example, the Court focused on certain large law firms).  Mem. Op. 15-19.  In rejecting SBA's rationale on that ground, the Court essentially demanded that the agency justify its Exemption 4 analysis by examining the specific characteristics of *each* of the several million PPP borrowers whose loans SBA was administering (there were already 4.9 million such loans by July 6, 2020).  (This Court did not suggest that *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019), the most recent Supreme Court precedent interpreting Exemption 4, required such an approach, and, indeed, the D.C. Circuit has not yet applied *Argus Leader*.)

But SBA was not required to present borrower-specific details to explain the Exemption 4 withholdings for each borrower under *Maydak* and *Landano*, which contemplated agency FOIA exemptions predicated on "generic" analysis applying to large groups of records.  Nor would such an approach have been practicable, given the CARES Act's imperative to SBA to act swiftly in

distributing agency-backed loans to mitigate the current economic conditions arising from the COVID-19 emergency.  *See* 1st Manger Decl. ¶ 15.  In light of the need to proceed expeditiously, it would have taken too long for SBA to require borrowers to substantiate their need for confidential treatment of individual data elements in their PPP loan applications, and for SBA itself to make borrower-specific determinations regarding treatment of payroll information as "confidential" or otherwise proprietary.  *See* 1st Manger Decl. ¶¶ 13-15, 95, 105.

Applying *Maydak* and *Landano* and accounting for the highly unusual emergency at issue in this case, the D.C. Circuit could reach a conclusion different from this Court's, thus presenting a serious legal question regarding Exemption 4.

> **B.**     **SBA's Exemption 6 Contention Presents a Serious Legal Question for Appeal**

This case also presents a serious legal question about SBA's invocation of Exemption 6—which protects certain "files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[,]" 5 U.S.C. § 552(b)(6)—"to withhold the names and addresses of borrowers of PPP loans of less than $150,000, as well as names and addresses of sole proprietorships and independent contractors that received EIDL loans of any amount."  Mem. Op. 21.

Exemption 6 requires the court to decide "whether 'disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest[,]'" and, "[i]f a substantial privacy interest is at stake, then . . . balance the privacy interest in non-disclosure against the public interest." *Consumers' Checkbook Ctr.*, 554 F.3d at 1050 (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)).  The Manger declaration explained SBA's rationale for concluding that the substantial privacy interest against freewheeling disclosure of financial information tied to names and addresses outweighed the interest in additional public disclosure about the PPP and EIDL program administration (factoring in statistical information about the

programs SBA had already released).  *See* 1st Manger Decl. ¶¶ 106-113.  This Court nevertheless rejected that rationale, based on its perceptions that the privacy interest was diminished by certain phrases in SBA's borrower application forms, and that the existence of governmental inquiries into PPP and EIDL administration separate from this case counted in favor of disclosure of the private information in this case.  Mem. Op. 22-40.

But the validity of the balance drawn by this Court is a substantial question for appeal, because the D.C. Circuit could reach a different conclusion about the significance of the privacy interest (including the effect, if any, of the language of agency forms, viewed in light of the protections for confidential information set forth in SBA's longstanding Standard Operating Procedures), and about the balance between that interest and the opposing interest in disclosure. As to the substantiality of the privacy interest:  In *Consumers' Checkbook Center*, the D.C. Circuit noted that it had "consistently held that an individual has a substantial privacy interest under FOIA in his financial information, including income[,]" and remarked that "requested information need not reveal completely an individual's personal finances to implicate substantial privacy concerns." 554 F.3d at 1050-51.  Whether phrasing in agency forms of disputed significance can undercut such a substantial privacy interest is an issue awaiting authoritative decision from the D.C. Circuit.

And, as to the interest in public disclosure:  Although this Court relied (Mem. Op. 32-35) on inquiries regarding fraud or other misconduct by recipients of CARES Act relief by federal prosecutors and other government officials, this Court's characterization of those inquiries as a factor supporting additional disclosure *under FOIA*, the D.C. Circuit could disagree.  Rather, as in *Consumers' Checkbook Center*, it could hold that the criminal prosecutions and other investigations are "'alternative source[s] of information available that could serve the public interest in disclosure" and that therefore "diminish [the] public interest value of disclosure" to the

instant FOIA requesters.  *See* 554 F.3d at 1053 (quoting *U.S. Dep't of Def. Dep't of Military Affairs v. FLRA*, 964 F.2d 26, 29-30 (D.C. Cir. 1992)).  Indeed, given that prosecutions into fraud or misconduct involving improperly obtained PPP or EIDL assistance concern unlawful conduct by borrowers, it is (at a minimum) less than clear that those prosecutions imply that *SBA* "was engaged in illegal activity[,]" such that the Exemption 6 balance weighs against the agency.  *Cf.*  554 F.3d at 1054 n.5 (Exemption 6 requires "more than unsupported allegations that *an agency* is not doing its job") (emphasis added).

As to Exemption 6, therefore, the D.C. Circuit could reach a conclusion different from this Court's, thus presenting a separate, serious legal question.

## CONCLUSION

For the foregoing reasons, SBA's motion for a stay should be granted, and this Court's Order of November 5, 2020 should be stayed until December 7, 2020, or, if SBA files a notice of appeal by that date, pending appeal.  Moreover, the Court should enter an immediate administrative stay extending through this Court's ruling on the instant motion to stay and, should this Court deny the motion, further extending through the D.C. Circuit's ruling on a motion for stay pending appeal filed in that Court.

12

Dated:  November 12, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/  Indraneel Sur*
INDRANEEL SUR
JAMES BICKFORD
Trial Attorneys

Federal Programs Branch,
Civil Division
United States Department of Justice
P.O. Box 883
Washington, D.C. 20044
Telephone:  (202) 616-8448
E-mail:      Indraneel.Sur@usdoj.gov

*Counsel for Defendant*