**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**WP COMPANY LLC
d/b/a THE WASHINGTON POST, et al.**,

Plaintiffs,

v.

**U.S. SMALL BUSINESS ADMINISTRATION**,

Defendant.

Case No. 1:20-cv-1240-JEB

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR STAY

This Court, firmly and unequivocally, found that the U.S. Small Business Administration (the "SBA") has wrongfully withheld from the public timely information of significant interest during the COVID-19 pandemic.  With no minced words, the Court on November 5, 2020, ordered the SBA by November 19 to "release the names, addresses, and precise loan amounts of all individuals and entities that obtained COVID-related loans pursuant to the Paycheck Protection Program and Economic Injury Disaster Loans program."  Order (Dkt. 22) at ¶ 5.  The SBA has withheld this information (the "Loan Data") for many months, in clear violation of the Freedom of Information Act ("FOIA"), even though it explicitly told loan applicants that the data is public information.

The SBA seeks to delay its disclosure obligations even further by requesting a stay of the November 5 Order pending possible appeal.  SBA's Mot. for Stay (Dkt. 24) ("Stay Mot.").  The Court should deny that motion and maintain the November 19 release deadline.  The SBA does not and cannot justify continuing to keep the Loan Data from the public.  Moreover, that data is essential to the public's evaluation, at this very moment, of the Congress's and the President's

1

continuing responses to the pandemic.  This Court should deny the stay and order the government to adhere to the November 19 deadline.

## ARGUMENT

A stay from the district court is not to be granted lightly, even – or especially – in FOIA cases of great public importance like this one.  *See, e.g.*, *Protect Democracy Project, Inc. v. Dep't of Justice*, 2020 U.S. Dist. LEXIS 203292, at *26-29 (D.D.C. Oct. 30, 2020) (denying "any request to stay" preliminary order for plaintiff in FOIA case where "the public interest is particularly well-served by the timely release of the requested documents").  Because "a stay pending appeal is always an extraordinary remedy," the party seeking a stay "carries a heavy burden to demonstrate that the stay is warranted."  *McCammon v. United States*, 584 F. Supp. 2d 193, 197 (D.D.C. 2008) (internal marks and citation omitted).  To carry that burden, the party seeking a stay must satisfy a four-factor test that weighs "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."  *Loving v. IRS*, 920 F. Supp. 2d 108, 110 (D.D.C. 2013) (Boasberg, J.) (citations omitted) (denying stay).  The SBA does not make the necessary showing on <u>any</u> of these factors, and it therefore fails to carry its burden for a stay.

## I.      The SBA Is Not Likely To Prevail On Appeal.

The SBA argues that "it is likely to prevail on at least one – if not both – of the merits issues that would arise on appeal from this Court's November 5 Order," or, at a minimum, that the case "presents a serious legal question" for appeal.  Stay Mot. at 14.  The force of this Court's logic and language in the November 5, 2020 Opinion ("Op.") (Dkt. 23), however,

demonstrates how unlikely the SBA is to succeed on appeal, and that the case turns on straightforward applications of familiar law to undisputed facts.

A.    **The SBA has not identified a "serious legal question" as to Exemption 4.**

As the Court is now familiar, the SBA has argued that it may withhold the Loan Data under Exemption 4, not because <u>the Loan Data</u> itself is confidential, but because it contends that the Loan Data could be used to reverse-engineer confidential <u>payroll data not even contained in the SBA records</u>.  Plaintiffs responded, and the Court agreed, that this argument "collapses" because it rests on the false premise "that the requested loan data necessarily reveals a business's payroll information."  Op. at 14.  As the Court concluded, the SBA cannot substantiate the predicate assumptions necessary for this reverse engineering, namely that borrowers (1) took the maximum loan amounts available to them; and (2) pay salaries exclusively under $100,000.  *Id.* at 14-18.  Thus, the Court correctly concluded, the Loan Data "enable[s] only bare speculation" as to the payroll information of any "given borrower."  *Id.* at 18-19.  This speculation upon speculation, the Court noted, does not suffice to meet the requirements for withholding "proprietary" information under Exemption 4.

Moreover, the Court observed that even if the Loan Data did reliably reveal payroll information – and it does not – "the agency likely still could not withhold such information under Exemption 4 . . . because the PPP loan application expressly notified potential borrowers . . . that their names and loan amounts would be 'automatically released' upon a FOIA request."  *Id.* at 20.  Thus, the SBA separately failed to show "how the loan data could remain 'confidential' for purposes of Exemption 4 when the Government not only provided no assurance of privacy, but also told borrowers explicitly that the information would be disclosed."  *Id.*

The SBA has not identified any serious legal question that remains following this Court's compelling rejection of its Exemption 4 arguments.  Instead, the SBA simply restates several of its previous positions without even addressing the Court's logical reasoning, let alone pointing out any flaws.

First, the SBA argues that "under its longstanding policy reflected in its Standard Operating Procedure, borrower payroll information is confidential and generally exempt from disclosure."  Stay Mot. at 8.  But once again, the SBA "fails to mention" as this Court aptly noted, "that the very next page of the SOP lists '[n]ames and commercial street and email addresses of recipients of approved loans' and '[k]inds and amounts of loans' under the heading, 'INFORMATION GENERALLY DISCLOSED.'"  Op. at 26 (emphasis in original).

Second, the SBA asserts that it has justified the withholdings by releasing its "'grouping' of the records into 'categories and offering generic reasons for withholding the documents in each category.'"  Stay Mot. at 8 (quoting Maydak v. Dep't of Justice, 218 F.3d 760, 763, 765 (D.C. Cir. 2000) (SBA's emphasis) (citations omitted)).  But as Plaintiffs have already explained, "Maydak does not support an Exemption 4 claim based on a generic showing; rather, it recognizes that the government 'satisfies its burden of proof under Exemption 7(A) by grouping documents in categories and offering generic reasons for withholding the documents in each category' and observes that 'other exemptions' not including Exemption 4 can be satisfied 'through generic, categorical showings' as well."  Reply in Further Support of Pls.' Cross-Mot. for Summ. J. (Dkt. 21) at 7 n.3 (quoting Maydak, 218 F.3d at 765-66 (emphasis added)).  This argument as well presents no serious legal question about this Court's rejection of the SBA's Exemption 4 claim.

Third, the SBA insists that it "explained the analytical connection between the PPP loan

amount and a borrower's average monthly payroll," and that "the Court essentially demanded

that the agency justify its Exemption 4 analysis by examining the specific characteristics of *each*

of the several million PPP borrowers."  Stay Mot. at 9 (SBA's emphasis).  But the Court

explicitly found that, regardless of the specific characteristics of <u>any</u> particular borrower, this

supposed "analytical connection" relies on "assumptions" that are so "fundamentally flawed" it

is impossible for "onlookers [to] deduce a business's payroll from the loan data with any degree

of confidence."  Op. at 15.

    <u>Fourth</u>, the SBA claims that "the text of the [PPP application] form itself" supports

keeping loan amounts and borrower names secret – even though the form stated that "names of

borrowers" and "amount[s] of the loan[s]" would be "automatically released" under FOIA.  Stay

Mot. at 8-9.  The SBA acknowledges that "this Court reached a contrary conclusion about the

'natural reading' of the application form," but the agency urges that it "should be permitted to

present [this issue] to the D.C. Circuit on appeal."  *Id.*  That the SBA continues to stake this

claim is remarkable.  It is just the latest in "a series of arguments that essentially all reduce to the

unavailing contention that the agency did not mean what the loan-application forms actually

said," Op. at 25, which does not give rise to a "serious legal question."  Further, the SBA has yet

to identify a single borrower out of the millions that received COVID-related assistance who

actually read the loan application form the way the SBA claims is most "natural."  The fact that

not one borrower has spoken up in this regard to support the SBA – whether by moving to

intervene in these proceedings, submitting a brief as amicus curiae, or providing a declaration for

the SBA itself to file – amounts to a "silence [that] can be likened to the dog that did not bark."

*Cf. Chisom v. Roemer*, 501 U.S. 380, 396 & n.23 (1991) (rejecting party's suggested legislative

interpretation in part because no actual legislator "identified or mentioned it at some point in the unusually extensive legislative history") (citing *The Complete Sherlock Holmes* (1927)).

Because the SBA has not identified any "serious legal question" concerning its Exemption 4 arguments, let alone that it has a "likelihood" of prevailing on appeal, the SBA has failed to carry its burden on the first element of the stay test with respect to Exemption 4.

### B.      The SBA has not identified a "serious legal question" as to Exemption 6.

In its November 5 Opinion, the Court also found that the balance between the privacy interest and the public interest in the release of the Loan Data, under Exemption 6, "is not particularly close."  Op. at 38.  Borrowers were placed on notice that the Loan Data would be public record, which "substantially diminish[es] the privacy interest at stake," *see id.* at 24, while the public interest in disclosure is "powerful" because the Loan Data will "enable[] meaningful evaluation of whether the PPP and EIDL program are being operated consistent with applicable legal constraints; whether funds have been distributed fairly, equitably, and devoid of fraud; and whether the programs are achieving their purpose," *see id.* at 30.

The SBA responds that a stay is warranted because "the D.C. Circuit *could* reach a different conclusion about the significance of the privacy interest . . . and about the balance between that interest and the opposing interest in disclosure," and that "the D.C. Circuit *could* disagree" as to the public benefits of monitoring the loan programs.  Stay Mot. at 11 (emphasis added).  The Supreme Court has expressly stated, however, that the party seeking a stay must show "more than a mere *possibility* of relief" on appeal.  *Nken v. Holder*, 556 U.S. 418, 434 (2009) (emphasis added and internal marks omitted).  The SBA does not provide this Court with any case law from the D.C. Circuit to support a finding that the appeals court is "likely," which is the correct legal standard, to reach a different conclusion on the Exemption 6 balancing.  Nor

does the SBA offer any reason to believe a "serious" question exists on the settled propositions that (1) an agency's representation that information will be public diminishes the privacy interest in that information; and (2) the public has a powerful interest in information that allows for "'scrutiny of agency action that distributes extensive amounts of public funds in the form of subsidies and other financial benefits.'"  Op. at 30 (quoting *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1232 (D.C. Cir. 2008)).

As with Exemption 4, the SBA has not demonstrated a likelihood of prevailing on appeal – or even pointed to a "serious legal question" that remains for appeal – regarding its arguments under Exemption 6.

## II.    The SBA Would Not Be Harmed Absent A Stay.

On the second stay factor, the SBA principally asserts that its right to appeal this Court's decision will be "irreparably harmed" if no stay is entered, because "the ordered release will cause confidentiality to be lost for all time."  Stay Mot. at 4 (citation and internal marks omitted). The SBA fails to show, however, that such disclosure would cause harm, let alone irreparable harm, to the agency itself.

This is not a case, unlike many the SBA cites, where the government seeks to keep secret its own internal processes and thus arguably stands to be harmed by release of the requested records.[1]  Nor is it a case where a non-party whose purportedly private information is subject to release has intervened to seek a stay, as was the case in *Providence Journal Co. v. FBI*, 595 F.2d

---

[1] *See Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (stay prevented release of records withheld under Exemption 5 as deliberative or attorney-client privileged); *People for the Am. Way Found. v. Dep't of Educ.*, 518 F. Supp. 2d 174 (D.D.C. 2007) (stay prevented release of records withheld under Exemption 5 as deliberative); *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Rep.*, 240 F. Supp. 2d 21 (D.D.C. 2003) (same).

889 (1st Cir. 1979) (cited at Stay Mot. at 4).  The SBA thus cannot assert a risk of irreparable harm when the agency's <u>own</u> information is not subject to disclosure, and when no third party has objected to the release.

**III.    A Stay Would Substantially Harm Plaintiffs And The Public.**

Balanced against the SBA's clear unlikelihood of prevailing on appeal and its failure to show irreparable harm absent a stay, the remaining factors – the public interest and the harm from granting a stay – weigh squarely in favor of denying a stay and maintaining the order that SBA timely release the Loan Data.  Indeed, the Court has already acknowledged the enormous public interest in disclosure, characterizing it as significant, powerful, and weighty.  *See generally* Op. at 38-40.

On this point the SBA severely downplays the imminent public importance of this information.  According to the SBA, the Loan Data is "mainly of historical interest" because the "loans have already been made and new applications are not being considered."  Stay Mot. at 5.  The SBA fails to mention, however, that SBA Administrator Carranza is <u>at this moment</u> advocating for "a new round of loans and aid from the government to keep employees working as the pandemic continues to spread."  *See* Josyana Joshua, *Small Businesses Need More Aid to Keep Employees, SBA Chief Says*, Bloomberg News (Oct. 27, 2020), https://www.bloomberg.com/news/articles/2020-10-27/small-businesses-need-more-aid-to-keep-employees-sba-chief-says.  Indeed, Senate Majority Leader McConnell recently stated that an "economic stimulus bill should be completed before the end of the year and will be the focus when the Senate resumes work" after the election.  *See* Erica Werner, *McConnell says stimulus bill is top priority when Senate returns*, The Washington Post (Nov. 4, 2020), https://www.washingtonpost.com/us-policy/2020/11/04/mcconnell-new-stimulus-bill/.

President-elect Biden likewise has "said one of his top priorities would be passing a stimulus plan." *See* Betsy McKay & Jonathan D. Rockoff, *What Are Joe Biden's Plans for Covid-19?*, The Wall Street Journal (Nov. 13, 2020), https://www.wsj.com/articles/what-are-joe-bidens-plans-for-covid-19-11605291824.

    Thus, while the Loan Data concerns funds that are already disbursed, the public interest in understanding how assistance efforts are working – and any failures in the disbursement process that the government needs to address going forward – is a live and pressing issue.  This imminent public interest weighs heavily against delaying disclosure.  *See Protect Democracy Project, Inc. v. Dep't of Def.*, 263 F. Supp. 3d 293, 301 (D.D.C. 2017) (finding "the potential for irreparable harm" from delaying disclosure of responsive records "because ongoing public and congressional debates about issues of vital national importance cannot be restarted or wound back") (internal marks and citation omitted).

    The Court need only look at the Department of Justice's recent publicity to determine that the Loan Data remains of ongoing public interest because the risk of waste, fraud, and abuse continues to threaten taxpayer dollars.  Just in the weeks since briefing on summary judgment closed in this matter, the Justice Department has announced several more prosecutions for COVID-related fraud.  *See Washington Man Charged With COVID-Relief Fraud*, Dep't of Justice (Oct. 27, 2020), https://www.justice.gov/opa/pr/washington-man-charged-covid-relief-fraud; *Five Charged in Connection with COVID-Relief Fraud Scheme*, Dep't of Justice (Oct. 22, 2020), https://www.justice.gov/opa/pr/five-charged-connection-covid-relief-fraud-scheme, *Texas Man Charged In $24 Million COVID-Relief Fraud*, Dep't of Justice (Oct. 9, 2020), https://www.justice.gov/opa/pr/texas-man-charged-24-million-covid-relief-fraud (defendant "used the proceeds primarily for personal expenses, spending them on multiple homes and

luxury cars, including a 2020 Bentley convertible, and sending millions of dollars in international transfers, the indictment alleges"); *Florida Recording Artist and Pennsylvania Man Charged for Role in $24 Million COVID-Relief Fraud Scheme*, Dep't of Justice (Oct. 6, 2020), https://www.justice.gov/opa/pr/florida-recording-artist-and-pennsylvania-man-charged-role-24-million-covid-relief-fraud; *Hawaii CEO Charged with COVID-Relief Fraud*, Dep't of Justice (Sept. 30, 2020), https://www.justice.gov/opa/pr/hawaii-ceo-charged-covid-relief-fraud.  Staying release of the Loan Data, as the SBA requests, would thus further delay the public from "tak[ing] its own look at the programs [to] 'more easily determine whether' the government 'is catching cheaters.'"  Op. at 34 (quoting *Multi Ag Media*, 515 F.3d at 1232).

On balance, none of the four factors supports a stay, while several factors weigh strongly against any further delay of disclosure.  The Court should therefore maintain the November 19 deadline for release of the Loan Data.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the SBA's motion for stay.

Dated:  November 16, 2020

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Kristel Tupja (#888324914)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
tupjak@ballardspahr.com

*Counsel for Plaintiffs*

10