UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WP COMPANY LLC d/b/a THE WASHINGTON POST, *et al.*,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>U.S. SMALL BUSINESS ADMINISTRATION,<br><br>　　Defendant. | Civil Action No. 20-1240 (JEB) |
| CENTER FOR PUBLIC INTEGRITY,<br><br>　　Plaintiff,<br><br>　　v.<br><br>U.S. SMALL BUSINESS ADMINISTRATION,<br><br>　　Defendant. | Civil Action No. 20-1614 (JEB) |

**MEMORANDUM OPINION**

On November 5, 2020, in these two Freedom of Information Act cases, this Court ordered the Small Business Administration to "release the names, addresses, and precise loan amounts" for borrowers that had obtained loans approved pursuant to the Paycheck Protection Program and the Economic Injury Disaster Loans (EIDL) program. See No. 20-1240, ECF No. 22 (Order) at 2. Unhappy with that disposition, the agency now moves to put it on hold, seeking a stay as it decides whether to appeal to the D.C. Circuit. Although cognizant that a denial of such Motion could moot an appeal, the Court nonetheless finds that the relevant factors weigh against a stay. It will, accordingly, deny the Motion and order SBA to release the requested

1

information by December 1, 2020.  This will at least provide the agency a week to notice its appeal and seek an administrative stay in the D.C. Circuit if it so chooses.

I.      Background

As the facts and procedural history of these FOIA suits are set out in this Court's recent summary-judgment Opinion, see WP Co. LLC v. U.S. Small Bus. Admin., Nos. 20-1240, 20-1614, 2020 WL 6504534 (D.D.C. Nov. 5, 2020), the briefest of summaries will suffice. Plaintiffs — a host of national-news organizations — submitted FOIA requests for records concerning the PPP and EIDL program.  Id. at *3.  Administered by SBA, those programs constituted the primary means by which the federal government assisted small businesses adversely affected by the COVID-19 crisis.  As of early November, the agency had processed and approved $525 billion in more than 5.2 million individual PPP loans, along with an additional $192 billion in EIDL loans.  Id. at *2–3.

After their FOIA requests failed to bear fruit, Plaintiffs brought two largely identical suits in this Court seeking an order requiring SBA to make available various loan-level data.  Id. at *3–4.  Although the agency released some loan information in July, the data, much to Plaintiffs' displeasure, contained glaring gaps: it did not provide both dollar figures and borrower names and addresses for a single PPP loan.  Id. at *3.  For some loans, SBA released the recipient's name and address, but withheld the actual loan amount; for others, it disclosed precise dollar amounts, but reserved borrower names and addresses.  Id.  SBA eventually settled on a similar partial-disclosure approach for the EIDL data.  Id. at *4.  According to the agency, its withholdings were based on FOIA Exemptions 4 and 6, which protect, respectively, confidential commercial information and information the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.  Id. at *3–4 (citing 5 U.S.C. § 552(b)(4), (6)).

Objecting to those withholdings, Plaintiffs in both cases cross-moved for summary judgment. Id. at *4. This Court ultimately agreed that neither of SBA's claimed FOIA exemptions covered the requested information. Id. at *9, 18. It accordingly ordered the agency to release the names, addresses, and precise loan amounts for all individuals and entities that had received PPP or EIDL COVID-related loans by November 19, 2020. See Order at 2.

A week before that deadline arrived, SBA moved to stay this Court's Order until December 7, 2020, or, if it files a notice of appeal by that date, pending appeal. See No. 20-1240, ECF No. 24 (Def. Mem.) at 2. As a fallback, it seeks a stay pending the Circuit's resolution of any such future stay motion there. Id. This Court subsequently issued a temporary stay of its Order just to cover the period during which it deliberated on the merits of the agency's Motion. See No. 20-1240, 11/13/20 Min. Order. Plaintiffs' Opposition and SBA's Reply having been filed, the Court is now ready to rule.

**II.   Legal Standard**

The party seeking a stay pending appeal bears the burden of justifying it based upon the following factors: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." Cuomo v. U.S. Nuclear Regul. Comm'n, 772 F.2d 972, 974, 978 (D.C. Cir. 1985). This familiar test is "'essentially the same' as the test for a preliminary injunction, 'although courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms favors a stay.'" Citizens for Responsibility & Ethics in Wash. v. Off. of Admin., 565 F. Supp. 2d 23, 25 n.1 (D.D.C. 2008) (quoting Al-Anazi v. Bush, 370 F. Supp. 2d 188, 193 & n.5 (D.D.C. 2005)). In

assessing the propriety of a stay, the Court bears in mind that it is an "extraordinary remedy," Cuomo, 772 F.2d at 978, that is "not a matter of right, even if irreparable injury might otherwise result" to the movant. Nken v. Holder, 556 U.S. 418, 427 (2009) (internal quotation marks and citation omitted). Instead, a stay is "an exercise of judicial discretion" that turns upon the particular circumstances of each case. Id. at 433 (citation omitted).

### III.  Analysis

#### A.  Merits of Appeal

In considering the four factors, the Court begins with the likelihood of SBA's success on appeal. The agency devotes the bulk of its Motion to arguing that it is likely to prevail on the merits of its appeal, should it elect to file one. See Def. Mem. at 7–12. In so doing, SBA offers little that it has not already argued and that the Court has not already rejected. The Court remains convinced that its prior Opinion correctly resolved the legal issues present in these cases. It recognizes, however, that so long as the other three factors "strongly favor a stay, such remedy is appropriate if 'a serious legal question is presented.'" Loving v. IRS, 920 F. Supp. 2d 108, 110 (D.D.C. 2013) (quoting Citizens for Responsibility & Ethics in Wash. v. Off. of Admin., 593 F. Supp. 2d 156, 160 (D.D.C. 2009)); see also Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843–44 (D.C. Cir. 1977). The Court does not dispute that the present cases involve a novel application of FOIA Exemptions 4 and 6 and raise serious legal questions and issues that do not lend themselves to immediate or obvious resolution. Indeed, the length of the Court's prior Opinion — a not-insubstantial 40 pages — implicitly admits as much. As a result, "[i]f the other factors tip in favor of a stay[,] . . . this factor will not preclude one." Loving, 920 F. Supp. 2d at 110; see also Holiday Tours, 559 F.2d at 843 (noting that court "may grant a stay even though its own approach may be contrary to movant's view of the merits").

B.  Harm to Movant

Turning to the second factor, several courts in this district have determined that, in the FOIA context, an agency experiences irreparable harm where release of the information at issue would moot its right to appeal. See, e.g., People for Am. Way Found. v. U.S. Dep't of Educ., 518 F. Supp. 2d 174, 177 (D.D.C. 2007); Ctr. for Int'l Envt'l L. v. Off. of U.S. Trade Rep., 240 F. Supp. 2d 21, 22 (D.D.C. 2003). Here, of course, disclosure of the withheld loan data would do just that. In other words, once the information has been turned over, the bell cannot be unrung on appeal. To be sure, as a technical matter, denying SBA a stay would not itself work "irreparable harm to [its] appellate rights." Def. Mem. at 4. In addition to the nearly three weeks the agency has had to decide whether to appeal the Court's Order, it will retain another full week following issuance of this Opinion to file a notice of appeal and seek an administrative stay from the Circuit, should it so desire. The Court recognizes, however, that other decisions have found irreparable harm in procedural postures akin to the present where disclosure would work a "*de facto* deprivation" of the government's basic right to seek review in the Court of Appeals. Ctr. for Int'l Envt'l L., 240 F. Supp. 2d at 23.

Plaintiffs briefly suggest that an agency cannot itself suffer irreparable harm when disclosure would reveal neither the government's own internal processes nor its communications, but rather only information regarding private individuals and entities — even if that information contributes to public understanding of the government's activities. See No. 20-1240, ECF No. 25 (Pl. Opp.) at 7–8. In response, SBA asserts that FOIA "balance[s] the public's need for access to official information with the Government's need for confidentiality," and that the agency's withholding of borrowers' information discharges its responsibilities under FOIA to protect both those borrowers' interests and the government programs to which their loans relate.

5

See No. 20-1240, ECF No. 26 (Def. Reply) at 3 (emphasis removed) (quoting Weinberger v. Catholic Action of Haw./Peace Educ. Project, 454 U.S. 139, 144 (1981)). Disclosure of the information, the government believes, would preclude SBA from fulfilling that statutory duty.

The Court need not resolve this dispute. For even if SBA can make out some showing of irreparable harm in the absence of a stay — as the Court is willing to assume — any such injury is substantially outweighed by the harm to Plaintiffs and the public at large should the Court put its Order on ice. Indeed, as it will now explain, the powerful public interest in disclosure renders a stay inappropriate here.

    C.   Public Interest and Harm to Others

"The public interest is a uniquely important consideration in evaluating a request for [a stay]." In re Special Proceedings, 840 F. Supp. 2d 370, 376 (D.D.C. 2012) (quoting Nat'l Ass'n of Mfrs. v. Taylor, 549 F. Supp. 2d 68, 77 (D.D.C. 2008)). In this case, as the Court has previously explained at length, the public interest in the withheld information is "particularly pronounced." WP Co., 2020 WL 6504534, at *13–17. SBA approved a whopping $717 billion in taxpayer-funded loans pursuant to the PPP and EIDL program. Id. at *1. Disclosure of the complete list of borrowers and precise loan amounts would facilitate "meaningful evaluation" of the government's activities — specifically, whether the programs "are being operated consistent with applicable legal constraints; whether funds have been distributed fairly, equitably, and devoid of fraud; and whether the programs are achieving their purpose." Id. at *13; see also Multi Ag Media LLC v. Dep't of Agric., 515 F.3d 1224, 1232 (D.C. Cir. 2008) (emphasizing "special need for public scrutiny of agency action that distributes extensive amounts of public funds in the form of subsidies and other financial benefits"). These concerns, moreover, are far from hypothetical. Plaintiffs have invoked alleged inequities in loan allocation, highlighted well-

documented allegations of fraud, and pointed to the government's own admissions that its COVID-related loan programs were subject to abuse. WP Co., 2020 WL 6504534, at *14–16. The Court cannot turn a blind eye to this, especially given that substantial components of the government-aid programs remain veiled. For instance, as a result of SBA's withholdings, there currently exists no public record of the identities of over 87% of PPP loan recipients. Id. at *16. That stands as an obvious impediment to any meaningful public inquiry regarding the overwhelming majority of loans, including whether certain types of businesses were over- or under-represented and whether the loans were distributed to qualifying recipients along equitable racial, gender, and geographic lines. Id.

Rather than directly disputing the importance of the withheld information, SBA downplays its immediate relevance, contending that the records "are mainly of historical interest" because "loans have already been made and new applications are not being considered." Def. Mem. at 5. On the contrary, the agency's lending programs remain a live and pressing issue. At this very moment, congressional leaders and executive-branch officials are considering potential renewed stimulus packages, with the possibility of a new round of business loans. See Pl. Opp. at 8–9 (citing articles); Tucker Higgins, Schumer Says McConnell Agrees to Discuss Covid Relief, As Aides Negotiate Government Funding, CNBC (Nov. 19, 2020), https://cnb.cx/36VY9op. How this will play out — particularly given recent surges in COVID-19 infections — will no doubt permeate public discourse in the coming months. See Jim Tankersley & Alan Rappeport, Biden Calls for Stimulus Ahead of a 'Dark Winter' for the Country, N.Y. Times (Nov. 16, 2020), https://nyti.ms/373sCRI.

While the withheld data does concern loans previously allocated, the public maintains an urgent and immediate interest in assessing the results of SBA's initial effort at administering a

massive small-business relief package and extracting lessons where possible — both to inform a critical, ongoing federal debate and to remedy failures in the loan-disbursement process moving forward. Courts in this district have credited similar interests when rejecting stay applications in comparable circumstances. See Leadership Conf. on Civ. Rights v. Gonzales, 421 F. Supp. 2d 104, 110 (D.D.C. 2006) (denying stay pending appeal in FOIA case where information was relevant to debate over re-authorization of legislation, thus making requests "time sensitive"); Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp., 230 F. Supp. 2d 12, 16 (D.D.C. 2002) (denying stay pending appeal in part given "harm to both the plaintiffs and the public" where "Congress, Executive agencies, and the public have been debating" government policy "without the benefit of the information sought by plaintiffs"); see also Am. Immigr. Council v. U.S. Dep't of Homeland Sec., No. 20-1196, 2020 WL 3639733, at *4 (D.D.C. July 6, 2020) ("District courts in this circuit have recognized that, where an obligation to disclose exists, a plaintiff may suffer irreparable harm if denied access to information that is highly relevant to an ongoing public debate.").

Plaintiffs also point to a continuing trickle of federal prosecutions as evidence that PPP- and EIDL-related fraud "continues to threaten taxpayer dollars," thus confirming that the loan data "remains of ongoing public interest." Pl. Opp. at 9–10 (citing examples of prosecutions); see also Dep't of Justice, Acting Assistant Attorney General Brian C. Rabbitt Delivers Remarks at Shinshu University 2nd White Collar Crime Workshop (Nov. 20, 2020), https://bit.ly/3nNVMe4 (noting that DOJ has publicly charged over 80 individuals for over $260 million in attempted PPP fraud, and predicting "many more" such cases "in future months"). In a brief attempt at deflection, SBA maintains that these prosecutions demonstrate that "release of the disputed information is not critical to government efforts to redress 'waste, fraud, and abuse,'

which can continue even if disclosure" is stayed. See Def. Reply at 4–5 (emphasis added) (quoting Pl. Opp. at 9). Perhaps, but the public no doubt maintains an independent, pressing interest in identifying fraud against the government — especially when hundreds of billions of taxpayer dollars are involved. Releasing the loan data would enable both the public to "more easily determine whether [the government] is catching cheaters," Multi Ag Media, 515 F.3d at 1232, as well as the incoming Congress to avoid past pitfalls in structuring any future loan-distribution scheme. Indeed, SBA's own inspector general has characterized federal prosecutions as "the smallest, tiniest piece of the tip of the iceberg," and the agency's commitment to "review" all PPP loans greater than $2 million leaves over 99% of program loans unaccounted for. WP Co., 2020 WL 6504534, at *15–16 (first quoting Stacy Cowley, Spotting $62 Million in Alleged P.P.P. Fraud Was the Easy Part, N.Y. Times (Aug. 28, 2020), https://nyti.ms/34IzHqQ, then quoting No. 20-1240, ECF No. 20-2 (Second Declaration of William Manger), ¶ 31).

Finally, SBA argues that disclosure would "harm the many individuals and businesses whose loans are at issue," particularly given their "privacy and commercial confidentiality interests in the disputed records." Def. Mem. at 5–6. Even if SBA is correct that release of the data would reveal confidential information, however, the "significant public interest in shedding light on SBA's administration of the PPP and EIDL program dramatically outweighs any limited private interest in nondisclosure." WP Co., 2020 WL 6504534, at *17. In light of that prevailing — and urgent — public interest, the agency's concerns do not cut in favor of a stay.

\* \* \*

The Court acknowledges that stays are frequently granted in FOIA cases. But "this is not a garden-variety FOIA matter[], in which there is little urgency to disclosure." Ariz. Fam.

Health P'ship v. U.S. Dep't of Health & Hum. Servs., No. 18-2581, 2019 WL 130578, at *2 (D.D.C. Jan. 8, 2019).  Staying disclosure through SBA's potential appeal would deprive the public of information critical to an ongoing national debate of considerable importance, as well as basic details surrounding an unprecedented federal relief effort financed by taxpayer dollars. Even assuming, therefore, that the agency has raised serious legal questions and made out some degree of irreparable harm, the overriding public interest against a stay — along with the harm that it would generate — renders such relief inappropriate here.

**IV.   Conclusion**

For the foregoing reasons, the Court will lift its temporary stay, deny Defendant's Motion to Stay, and order that it release the names, addresses, and precise loan amounts for all individuals and entities that obtained PPP and EIDL COVID-related loans by December 1, 2020. A separate Order so stating will issue this day.  While nothing in this decision prevents SBA from seeking its desired relief in the Court of Appeals before that date, the Court sees no basis for any further delay.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  November 24, 2020