**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WP COMPANY LLC
d/b/a THE WASHINGTON POST, et al.,

Plaintiffs,

v.

U.S. SMALL BUSINESS ADMINISTRATION,

Defendant.

Case No. 1:20-cv-1240-JEB

Oral Argument Requested

# REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' SUPPLEMENTAL CROSS-MOTION FOR SUMMARY JUDGMENT

Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Kristel Tupja (#888324914)
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
tupjak@ballardspahr.com

*Counsel for Plaintiffs*

Dated: May 14, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... ii

PRELIMINARY STATEMENT .................... 1

ARGUMENT .................... 3

I. THE SBA FAILS TO JUSTIFY ITS WITHHOLDINGS UNDER EXEMPTION 4 .................... 3

A. The SBA Incorrectly Tries To Shift The Burden Of Proof Onto Plaintiffs .................... 3

B. The SBA Fails To Show That Any Particular Lenders Actually And Customarily Treat Interim Loan Status Information As Confidential .................... 4

C. The SBA Fails To Show That DUNS Numbers Are Customarily And Actually Treated As Private .................... 7

II. THE SBA FAILS TO JUSTIFY ITS WITHHOLDINGS UNDER EXEMPTION 8 .................... 8

III. THE SBA FAILS TO JUSTIFY WITHHOLDING CONCEDEDLY NON-EXEMPT EMPLOYER IDENTIFICATION NUMBERS .................... 9

CONCLUSION .................... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bartko v. Department of Justice*,
898 F.3d 51 (D.C. Cir. 2018) ......3

**Evans v. Federal Bureau of Prisons*,
951 F.3d 578 (D.C. Cir. 2020) ......10

**Food Marketing Institute v. Argus Leader Media*,
139 S. Ct. 2356 (2019) ......1

*Hopkins v. Women's Division, General Board of Global Ministries*,
284 F. Supp. 2d 15 (D.D.C. 2003) ......9

*Johnson v. Executive Office for U.S. Attorneys*,
310 F.3d 771 (D.C. Cir. 2002) ......2

*Mead Data Center, Inc. v. Department of the Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ......9

*Public Citizen, Inc. v. OMB*,
598 F.3d 865 (D.C. Cir. 2009) ......3

*Public Citizen v. Department of State*,
11 F.3d 198 (D.C. Cir. 1993) ......4

**Renewable Fuels Association v. EPA*,
2021 U.S. Dist. LEXIS 21137 (D.D.C. Feb. 4, 2021) ......1, 4, 7

*Wolf v. CIA*,
473 F.3d 370 (D.C. Cir. 2007) ......4

*WP Co. LLC v. SBA*,
2020 U.S. Dist. LEXIS 206836 (D.D.C. Nov. 5, 2020) ......3, 8

**PRELIMINARY STATEMENT**

The SBA's Opposition ("Opp.") fails to justify its withholding of interim loan status information, borrower DUNS numbers, and borrower EINs (together, the "Additional Data") – indeed, it focuses more on trying to excuse those failures than on trying to address them. The Court should reject the SBA's claims and order the agency to release the Additional Data in full.

First, the SBA still fails to demonstrate that interim loan status information "is both customarily and actually treated as private by its owner" such that it qualifies for withholding under Exemption 4. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019). As this Court has explained, an agency claiming Exemption 4 must show "how *the particular party* customarily treats the information, not how the industry as a whole treats the information." *Renewable Fuels Ass'n v. EPA*, 2021 U.S. Dist. LEXIS 21137, at *21 (D.D.C. Feb. 4, 2021) (emphasis added). The SBA, however, did not look at the customary practice of *any* PPP lender. Instead, the SBA simply throws up its hands and protests that "it would be utterly infeasible" to survey even a "fraction of PPP lenders to assess their confidentiality practices regarding interim loan status data." Opp. at 13. By refusing to make any effort on this point, the SBA fails to meet its burden under Exemption 4.

Second, the SBA likewise fails to explain how DUNS numbers could possibly amount to "private" information within the scope of Exemption 4 given that multiple federal agencies make DUNS numbers available for download on their websites in bulk and on demand. The SBA claims that "the release by certain other agencies of D-U-N-S Numbers . . . does not imply that [Dun and Bradstreet] authorized release of the D-U-N-S Number for PPP loans," Opp. at 16, but that falls far short of carrying the SBA's burden to show that DUNS numbers are "actually" and "customarily" treated as confidential information. *Food Mktg. Inst.*, 139 S. Ct. at 2366.

Third, the SBA failed to raise Exemption 8 in the first round of summary judgment, and thus it forfeited its argument for withholding interim loan status information under that exemption as well. The SBA claims that the Court should excuse that failure because "the information in dispute [now] is different from the information disputed through the first set of summary judgment briefs," Opp. at 18, but the relevant question is whether the agency *could have* asserted Exemption 8 earlier under the same theory it now espouses. The answer to that question is plainly yes, and the SBA does not even attempt to suggest otherwise.[1]

Fourth, the SBA fails to provide a "detailed justification" for withholding concededly non-exempt EINs on the grounds that they are not "reasonably segregable" from exempt SSNs. *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal marks omitted). Plaintiffs have observed that the SBA could seek assistance in segregating the data from the Social Security Administration or the IRS, but the SBA rejects that idea out of hand, proposing its own rule that "[i]nformation that cannot be segregated by any technical means available to the agency that holds the record is not 'reasonably segregable.'" Opp. at 20. If either of those agencies could assist the SBA with the data segregation process, however, there would indeed be technical means "available" to the SBA. By refusing to make any effort on this point as well, the SBA fails to justify its withholding of responsive and non-exempt EINs.

Nearly a year ago, this Court gave the SBA a two-week deadline to "produce any responsive non-exempt records" in this case. *See* Minute Order of June 29, 2020. The SBA still has not fully complied with that order. In light of the SBA's latest failure to carry its burden on its withholdings, the Court should order the SBA to promptly release the Additional Data and

[1] Indeed, rather than press the issue, the SBA now tells the Court that it "need not address" the Exemption 8 claim on the grounds that those withholdings will rise or fall on whether the Court finds the same information to be confidential, or not, under Exemption 4. *See* Opp. at 17-18.

award Plaintiffs their costs and reasonable attorneys' fees for this supplemental round of summary judgment.

## ARGUMENT

On each of its withholdings, the SBA fails to rebut FOIA's "presumption in favor of disclosure" that underlies FOIA's objective "'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 869 (D.C. Cir. 2009) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976)).

### I. THE SBA FAILS TO JUSTIFY ITS WITHHOLDINGS UNDER EXEMPTION 4.

The SBA concedes, as it must, that an agency can withhold information under Exemption 4 only where that information "'is customarily kept private, or at least closely held, by the person imparting it.'" Opp. at 15 (quoting *Food Mktg. Inst.*, 139 S. Ct. at 2363). As a result, the SBA cannot properly withhold any of the Additional Data under Exemption 4 because it has failed to show that the "person[s] imparting" that information actually and customarily keep it private.

#### A. The SBA Incorrectly Tries To Shift The Burden Of Proof Onto Plaintiffs.

Rather than even attempt to justify its withholdings under Exemption 4, the agency instead tries repeatedly to shift the burden of proof onto Plaintiffs by conflating the usual Exemption 4 test with the "public domain" doctrine. That doctrine is inapposite here.

It is well settled that an agency asserting a FOIA exemption "bears the burden of proving that [the] exemption applies." *Bartko v. Dep't of Justice*, 898 F.3d 51, 62 (D.C. Cir. 2018). In the context of an Exemption 4 claim specifically, this Court has explained that the "SBA must show that [the withheld information] is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *WP Co. LLC v. SBA* ("*WP I*"), 2020 U.S. Dist. LEXIS 206836, at *16 (D.D.C. Nov. 5, 2020) (citation and internal marks omitted). To withhold interim

loan status information under Exemption 4, therefore, the SBA bears the burden of demonstrating that the information is privileged or confidential.

The "public domain" doctrine, by contrast, provides that "when information has been officially acknowledged, its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (internal marks omitted). That doctrine thus requires the plaintiff to make a threshold showing that the information was "previously disclosed." *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993).

According to the SBA, the burden here "is on Plaintiffs to show that the information they seek is in the 'public domain.'" Opp. at 13. But Plaintiffs are not asserting the public domain doctrine in this case. Rather, the parties dispute whether the SBA's Exemption 4 claim is valid in the first instance. The SBA thus bears the burden, set out in *Food Marketing Institute*, of showing that interim loan status information is privileged or confidential. As explained below, it has failed to carry that burden.

### B. The SBA Fails To Show That Any Particular Lenders Actually And Customarily Treat Interim Loan Status Information As Confidential.

According to the SBA, interim loan status information "is kept confidential by longstanding practice between borrowers and lenders." Opp. at 4. As Plaintiffs have pointed out, however, in determining whether information is both customarily and actually treated as private, "[t]he question is 'how *the particular party* customarily treats the information, not how the industry as a whole treats the information.'" *Renewable Fuels*, 2021 U.S. Dist. LEXIS 21137, at *21 (emphasis added) (quoting *Ctr. for Auto Safety v. NHTSA*, 244 F.3d 144, 148 (D.C. Cir. 2001)). The SBA failed to make such a particularized showing in its opening brief, and it fails again in its Opposition.

Given that Exemption 4 requires a particularized assessment of confidentiality, not an industry-wide assessment, the SBA's refusal to ask any actual PPP lenders about their customary confidentiality practices is inexplicable. Instead, the SBA lashes out at Plaintiffs for putting the agency to its proof: the SBA asserts that it would require "an imaginary world of zero costs and unlimited time" to satisfy its duties under FOIA "by surveying some fraction of PPP lenders to assess their confidentiality practices regarding interim loan status data." Opp. at 13. "[I]n the real world," the SBA claims, "it would be utterly infeasible to conduct that kind of inquiry." *Id.* As Plaintiffs have noted, however, the top 15 PPP lenders alone are responsible for approximately 35 percent of all PPP loans this year, and the SBA could at least have surveyed this small group of major lenders about their particular practices. *See* Mem. in Supp. of Pls.' Suppl. Cross-Mot. for Summ. J. ("Mem.") at 10, Dkt. 41. The SBA has not explained why it refused to expend even that minimal amount of effort to show that any particular lenders customarily and actually keep interim loan status information private. The agency has therefore failed to substantiate its withholdings under Exemption 4.

Moreover, to illustrate that lenders do <u>not</u> actually keep interim loan status information private, Plaintiffs noted in their opening brief that lenders provide information about borrowers to commercial credit bureaus, which then make that information publicly available in business credit reports. Mem. at 10. The SBA offers several responses, none of which hits the mark.

First, the SBA asserts that under "the plain text of the Code of Federal Regulations," interim loan statuses "other than charged-off or paid-in-full" are exempt from disclosure under FOIA. Opp. at 5. That regulatory text, however, says nothing about whether, in practice, lenders actually and customarily treat interim loan status information as confidential.

Second, the SBA argues that even if lenders make interim loan status information available to commercial credit bureaus, such disclosures do not alter the "private" nature of the information. Opp. at 6-8. More specifically, the SBA claims that interim loan status information remains private because one of the commercial credit bureaus, Experian, requires purchasers of business credit reports to have "legitimate commercial purposes" and to agree to "maintain the information in strict confidence." Opp. at 7. That argument, however, fails for lack of any limiting principle: under the SBA's logic, business loan status information would remain "private" no matter how many times a commercial credit bureau has shared it.

Third, the SBA claims that lenders provide slightly different loan status information to commercial credit bureaus and to the SBA. Opp. at 8-14. But this argument, as discussed above, conflates the Exemption 4 test with the "public domain" doctrine. *Id.* at 8-9. Plaintiffs do not need to prove that the withheld loan status information is identical to information the government has previously and officially disclosed; the SBA needs to prove that lenders customarily and actually treat interim loan status information as confidential. The agency fails to do so here.

Fourth, the SBA insists that releasing the loan status information would cause "competitive harm" by "disclos[ing] the *entire* loan portfolio for each (now identifiable) lender, which is not information that can be gleaned from aggregated commercial credit reports." Opp. at 11-13 (SBA's emphasis). Setting aside the Supreme Court's rejection of the "competitive harm" test in *Food Marketing Institute*, the purported risk of harm is pure speculation. According to the SBA, "if Lender X knew the full set of Lender Y's borrowers and their delinquent status, Lender X could focus its marketing efforts on Lender Y's most on-time borrowers while leaving Lender Y to service the rest." Opp. at 11. That may be a valid reason not to disclose an ordinary loan portfolio, but the SBA "guarantees one hundred percent of the

value of PPP loans." *See* Mem. in Supp. of SBA's Suppl. Mot. for Summ. J. at 5, Dkt. 37. The PPP lenders should therefore be made whole no matter how many of their PPP borrowers may become delinquent.

Fifth, the SBA observes that "even if [business credit] reports impaired the confidentiality of such data for borrowers with an available commercial credit report, they certainly do not affect the confidentiality of loan status information for borrowers without such reports." Opp. at 14. That argument only underscores why the SBA must support its Exemption 4 claims on a particularized basis, not on a categorical basis. To the extent that some borrowers' loan status information is maintained in confidence, while others are not, the SBA bears the burden of identifying those differences and withholding only the interim loan statuses that demonstrably are actually and customarily kept private. *See Renewable Fuels*, 2021 U.S. Dist. LEXIS 21137, at *21. It has failed to carry that burden here.

### C. The SBA Fails To Show That DUNS Numbers Are Customarily And Actually Treated As Private.

The SBA likewise fails to carry its burden under Exemption 4 to demonstrate that DUNS numbers are customarily and actually treated as private. The Court should accordingly direct the SBA to release this information as well.

As Plaintiffs have shown, the Government itself makes wide swaths of DUNS numbers available to the public through easily accessible online search tools. Mem. at 13-14. The SBA again responds by trying to shift the burden of proof. Conflating the Exemption 4 test with the "public domain" doctrine, the SBA argues that "Plaintiffs fail to identify specific information in the public domain that duplicates that being withheld." Opp. at 15 (citation and internal marks omitted). The proper standard for this Court to apply, however, is whether the SBA has carried

its burden of demonstrating that the DUNS numbers fall within the scope of Exemption 4. *WP I*, 2020 U.S. Dist. LEXIS 206836, at *16.

The SBA does not and cannot carry this burden because multiple federal agency websites make DUNS numbers available on demand and in vast quantities with no apparent restrictions on their use. Mem. at 14. The SBA responds that "each website has specific terms of use noting that the use is highly restricted," Opp. at 17, but the SBA does not claim – nor could it – that members of the public even have to read those terms, let alone agree to them, before obtaining the DUNS numbers. Likewise, the SBA asserts that "it remains 'expressly impermissible to disseminate [DUNS numbers] in bulk,'" *see id.*, but that is precisely what the Government does when it lets members of the public download tens of thousands of DUNS numbers at a time with just a few keystrokes. *See* Mishkin Decl. at ¶¶ 12-14, Dkt. 42-3.

Because the SBA has not shown that DUNS numbers are customarily and actually treated as private, the agency has failed to carry its burden to withhold the numbers under Exemption 4.

## II. THE SBA FAILS TO JUSTIFY ITS WITHHOLDINGS UNDER EXEMPTION 8.

Plaintiffs have shown that the SBA waived or forfeited any claim under Exemption 8 because the agency failed to raise that exemption in the prior round of summary judgment. *See* Mem. at 14-16. The SBA challenges that proposition, *see* Opp. at 17-19, but the point is moot for two reasons. First, the Plaintiffs agree with the SBA that the Court "need not address" Exemption 8 because "[i]f the information is confidential . . . , it is properly withheld under Exemption 4 (so no Exemption 8 analysis is necessary). If, on the other hand, the information is not confidential, then it cannot be withheld under either exemption under the circumstances here presented." Opp. at 17-18. Of course, if the SBA's Exemption 4 claim fails, the Exemption 8 claim fails along with it.

Second, Plaintiffs have demonstrated that even if the SBA could raise an Exemption 8 claim for the first time, the SBA still has not shown, and cannot show, that releasing loan status information would create a reasonably foreseeable risk of harm to the relationship between lenders and the agency – the interest that Exemption 8 is meant to protect. Mem. at 17-18. The SBA does not respond to that point, and thus concedes it. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a [party] files an opposition to a dispositive motion and addresses only certain arguments raised by the [movant], a court may treat those arguments that the [opposition] failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).

## III. THE SBA FAILS TO JUSTIFY WITHHOLDING CONCEDEDLY NON-EXEMPT EMPLOYER IDENTIFICATION NUMBERS.

As Plaintiffs have previously explained, an agency must satisfy a demanding test in seeking to withhold responsive and concededly non-exempt information on the grounds that it is not "reasonably segregable" from exempt material. Mem. at 19-20. Specifically, the agency must demonstrate that the exempt and non-exempt material are "inextricably intertwined." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Here, the SBA claims that it has passed that test in withholding non-exempt EINs along with exempt SSNs, because it "explained in great detail why it could not segregate [EINs] for release." Opp. at 19. In reality, the SBA only has explained how it got itself into its present state of possessing intertwined SSNs and EINs, not why that intertwined data is inextricable.

The SBA's attempted explanation is the very definition of conclusory: the SBA states that "there is no way for the SBA to reliably distinguish SSNs from EINs," citing its Chief FOIA Officer's assertion that the "SBA has no way to check or correct for such errors." *Id.* (citing

Benderson Decl. at ¶ 75). The SBA's counsel does not claim that the agency has even <u>tried</u> to segregate the data.

That kind of flimsy claim does not carry the agency's heavy burden. As Plaintiffs have noted, *see* Mem. at 20-21, in *Evans v. Federal Bureau of Prisons*, the Government claimed that it lacked the technical ability to segregate exempt and non-exempt portions of responsive video, and the D.C. Circuit rejected that bald assertion, holding "that the government is required to explain *why* the possibility of [a] method of segregability is unavailable if it is to claim the protection of the exemption." 951 F.3d 578, 587 (D.C. Cir. 2020) (emphasis added). The SBA has likewise not explained <u>why</u> there is no possible method of segregating EINs from SSNs.

Nor has the SBA explained why it refuses even to inquire whether the Social Security Administration or the IRS might be able to distinguish SSNs from EINs. The SBA asserts only that it was not "obligated to seek technical assistance" from those agencies and that, by its own definition, "[i]nformation that cannot be segregated by any technical means available to the agency that holds the record is not 'reasonably segregable.'" Opp. at 20. But that simply begs the question, because if the Social Security Administration or the IRS could segregate the data, then such technical means would in fact be "available" to the SBA.

By sitting on its hands, the SBA has failed to carry its burden of demonstrating that the non-exempt EINs are "inextricably intertwined" with the exempt SSNs. The Court should deny the SBA's supplemental motion on this basis as well.

## <u>**CONCLUSION**</u>

For the foregoing reasons and those stated in their opening brief, Plaintiffs respectfully request that their supplemental cross-motion for summary judgment be granted, that the SBA's supplemental motion for summary judgment be denied, that the SBA be ordered to disclose the

Additional Data in full, and that Plaintiffs be awarded the additional costs and attorneys' fees they have incurred in this second round of summary judgment.

Dated: May 14, 2021            Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Kristel Tupja (#888324914)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
tupjak@ballardspahr.com

*Counsel for Plaintiffs*