**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WP COMPANY LLC d/b/a THE WASHINGTON POST, BLOOMBERG L.P., DOW JONES & COMPANY, INC., PRO PUBLICA, INC., THE NEW YORK TIMES COMPANY, AMERICAN BROADCASTING COMPANIES, INC. d/b/a ABC NEWS, AMERICAN CITY BUSINESS JOURNALS, CABLE NEWS NETWORK, INC., NBCUNIVERSAL MEDIA, LLC d/b/a NBC NEWS, THE ASSOCIATED PRESS, THE CENTER FOR INVESTIGATIVE REPORTING d/b/a REVEAL, | |
| *Plaintiffs,* | Case No. 1:20-cv-01240 (JEB) |
| v. | |
| U.S. SMALL BUSINESS ADMINISTRATION, | |
| *Defendant.* | |

**DEFENDANT'S SECOND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant United States Small Business Administration ("SBA") hereby respectfully moves for a supplemental grant of summary judgment in this Freedom of Information Act case because SBA has produced all responsive records that can be located through reasonable searches and withheld only non-segregable information properly subject to a Freedom of Information Act Exemption. The reasons for this second supplemental motion—which contains the supplemental submission of SBA in response to the Court's Order of July 15, 2021—are further set forth in the memorandum of points and authorities in support of SBA's second supplemental motion for summary judgment, SBA's second supplemental statement of material facts as to which there is no genuine issue, and the Third Declaration of Eric S. Benderson (as well as the exhibits thereto). A proposed order is also submitted.

Under Local Civil Rule 7(m), SBA notes that Plaintiffs did not object to SBA's request that the deadline for SBA's supplemental submission under this Court's Order of July 15, 2021 be set for September 27, 2021, and in light of that position and the entire record herein, SBA expects that Plaintiffs will oppose the relief requested in the instant motion.

Dated: September 27, 2021

Respectfully submitted,

BRIAN M. BOYNTON
*Acting Assistant Attorney General*

ELIZABETH J. SHAPIRO
*Deputy Branch Director*

*/s/ Indraneel Sur*
INDRANEEL SUR  (D.C. Bar 978017)
*Trial Attorney*

JAMES BICKFORD
*Trial Attorney*

Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883
Washington, D.C. 20044
Telephone:  (202) 616-8448
E-mail:      Indraneel.Sur@usdoj.gov

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WP COMPANY LLC d/b/a THE
WASHINGTON POST, BLOOMBERG
L.P., DOW JONES & COMPANY, INC.,
PRO PUBLICA, INC., THE NEW YORK
TIMES COMPANY, AMERICAN
BROADCASTING COMPANIES, INC.
d/b/a ABC NEWS, AMERICAN CITY
BUSINESS JOURNALS, CABLE NEWS
NETWORK, INC., NBCUNIVERSAL
MEDIA, LLC d/b/a NBC NEWS, THE
ASSOCIATED PRESS, THE CENTER FOR
INVESTIGATIVE REPORTING
d/b/a REVEAL,

                  *Plaintiffs,*

    v.

U.S. SMALL BUSINESS
ADMINISTRATION,

                  *Defendant*.

Case No. 1:20-cv-01240
(JEB)

**SECOND SUPPLEMENTAL MEMORANDUM**
**OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Dated: September 27, 2021

BRIAN M. BOYNTON
*Acting Assistant Attorney General*

ELIZABETH J. SHAPIRO
*Deputy Branch Director*

INDRANEEL SUR
*Trial Attorney*

JAMES BICKFORD
*Trial Attorney*

Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883
Washington, D.C. 20044
Telephone:  (202) 616-8448
E-mail:      Indraneel.Sur@usdoj.gov

*Counsel for Defendant*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 4

Withholdings Remaining At Issue At This Stage Of The Action .................................... 4

This Court's Memorandum Opinion ................................................................................ 4

ARGUMENT .................................................................................................................. 6

I.      SBA Properly Withheld Under Exemption 4 the PPP Interim Loan Status
        Information It Obtained From Lenders Under An Assurance Of Confidentiality
        And Other Fields From Which Such Confidential Interim Information Can Be
        Inferred .......................................................................................................... 7

        A.   Submitter-Specific Evidence Gathered On Remand Shows That PPP Lenders
             Treat Interim Loan Status Information As Confidential .......................... 7

             1.      Interim Loan Status Information Is Customarily And Actually
                     Treated As Private ...................................................................... 7

             2.      SBA Assured Continued Confidentiality .................................... 11

             3.      Submitter-Specific Evidence Confirms That The Disputed Interim
                     Loan Status Information Has Not Been Made Public .............. 12

        B.   Additional Data Fields And Internal SBA Coding That Would Necessarily
             Reveal Interim Loan Status Information Also Fall Within Exemptions 4 ........... 12

II.     Exemption 6 Protects Social Security Numbers From Disclosure, And Employer
        Identification Numbers Are Not Reasonably Segregable From Them. ......................... 13

III.    SBA Has Shown That Releasing The Disputed Information Would Cause
        Foreseeable Harm ............................................................................................ 18

CONCLUSION .............................................................................................................. 20

**Table of Authorities**

**CASES**

*Carter v. U.S. Dep't of Commerce*,
  830 F.2d 388 (D.C. Cir. 1987) ................................................................. 13

*Consumers' Checkbook Ctr. v. Dep't of Health & Human Servs.*,
  554 F.3d 1046 (D.C. Cir. 2009) ............................................................... 13

*F.T.C. v. Grolier Inc.*,
  462 U.S. 19 (1983) .............................................................................. 10, 17

\* *Food Mktg. Inst. v. Argus Leader Media*,
  139 S. Ct. 2356 (2019) ...................................................................... 5, 7, 9

*Forsham v. Harris*,
  445 U.S. 169 (1980) ................................................................................ 17

*Judicial Watch v. FDA*,
  449 F.3d 141 (D.C. Cir. 2006) ................................................................. 13

*Jurewicz v. U.S. Dep't of Agric.*,
  741 F.3d 1326 (D.C. Cir. 2014) ............................................................... 13

\* *Multi Ag Media LLC v. U.S. Dep't of Agric.*,
  515 F.3d 1224 (D.C. Cir. 2008) ............................................................... 12

*N.L.R.B. v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ................................................................................ 17

*Nat'l Bus. Aviation Ass'n, Inc. v. FAA*,
  686 F. Supp. 2d 80 (D.D.C. 2010) ........................................................... 13

*Pub. Citizen Health Rsrch. Grp. v. FDA*,
  704 F.2d 1280 (D.C. Cir. 1983) ................................................................. 7

*Renewable Fuels Ass'n v. EPA*,
  519 F. Supp. 3d 1 (D.D.C. 2021) ................................................... 11, 12, 13

*Reporters Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (D.C. Cir. 2021) .................................................................... 18

*Schrecker v. U.S. Dep't of Justice*,
  217 F. Supp. 2d 29 (D.D.C. 2002) ............................................................. 6

\*   *U.S. Dep't of Justice v. Landano,*
    508 U.S. 165 (1993) ............................................................................. 10

*Wolf v. CIA,*
    473 F.3d 370 (D.C. Cir. 2007) ............................................................... 6

*WP Co. v. U.S. Small Bus. Admin.,*
    2021 WL 2982173 (D.D.C. July 15, 2021) .................................... *passim*

*Yeager v. DEA,*
    678 F.2d 315 (D.C. Cir. 1982) ............................................................. 17

*Yunes v. U.S. Dep't of Justice,*
    263 F. Supp. 3d 82 (D.D.C. 2017) ....................................................... 10

## STATUTES

5 U.S.C. § 552 .................................................................................... *passim*

5 U.S.C. § 552a .......................................................................................... 16

26 U.S.C. § 6103 ............................................................................... 3, 15, 16

42 U.S.C. § 1306 ........................................................................................ 16

## REGULATIONS

13 C.F.R. Pt. 102, Subpt. A, App. A ........................................................ 11

20 C.F.R. § 401.125 .................................................................................. 16

## INTRODUCTION

The U.S. Small Business Administration ("SBA") has complied with this Court's instructions in its Memorandum Opinion of July 15, 2021, and now seeks supplemental summary judgment, for a second time, as to Plaintiffs' Freedom of Information Act ("FOIA") requests seeking information about the Paycheck Protection Program ("PPP") loans made by agency-approved private lenders to borrowers under SBA guarantees authorized by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.

The remaining issues in dispute concern SBA's grounds for withholding lender designations of certain borrowers as being in default, delinquent, or late on loan payments, and additional designations about loan status *other than* final dispositions of loans ("charged-off" or "paid-in-full"), known as "interim" loan status information; internal SBA codes that, if disclosed, would reveal such interim loan status information; and borrower tax identification numbers.  SBA asserted that the first and second data sets fall within Exemption 4 and the third data set contains information that cannot be reasonably segregated without violating Exemption 6.  This Court denied SBA summary judgment in pertinent part, directing the agency to "more fully support its withholdings with respect to interim loan-status information and borrower tax-identification numbers."  *See WP Co. v. U.S. Small Bus. Admin.*, 2021 WL 2982173, at *1 (D.D.C. July 15, 2021) ("Mem. Op.").

SBA has addressed the questions this Court raised, as explained in the declarations SBA files today.

*First*, SBA developed significant proof on remand confirming that interim loan status information falls within Exemption 4, for "commercial or financial information obtained from a person and privileged or confidential."  SBA endeavored to "survey" a "small yet meaningful

subset of" PPP lenders, and to gather "credible substantiation of any individual lender's claim of customary and actual confidentiality with respect to interim PPP loan status," adhering to this Court's view that such evidence would substantially reinforce the Exemption 4 analysis.  *See Mem. Op.* 2021 WL 2982173, at *6.  SBA contacted the top 300 PPP lenders, but none asserted that interim loan status information is *not* confidential.  Rather, PPP lenders stated that they do "customarily and actually treat interim loan status as confidential."  *Id.*, 2021 WL 2982173 at *6.

On that point SBA received correspondence from the American Bankers Association; a declaration from the Bank Policy Institute (BPI) stating the views of eight of its members; and correspondence from four individual PPP lenders.  SBA also compiled declarations about individual bank practices from twenty-four (24) PPP lenders, attesting through their experienced executives.  The lender-focused evidence SBA developed on remand, when considered in combination with the other circumstances supporting the confidentiality of PPP interim loan status information that the agency previously described, establishes that SBA properly withheld that information—alongside the additional data fields and internal coding that would, if disclosed, unavoidably reveal interim loan status information, because those additional fields and coding would disclose the interim status of loans such as delinquency.  Of course, at the end of a PPP loan's term, if SBA is ultimately forced to charge off a portion of the loan as a bad debt—or, more often, when a loan is paid in full—then the agency will release that information, which bears on the agency's financial obligations under the law.  Moreover, if Exemption 4 were to require a governmental assurance that the confidential information would be maintained as confidential, SBA provided one, including in the plain text of the Code of Federal Regulations.  The lender-focused evidence also confirms that interim loan status information is not made public, as Plaintiffs have contended in relying on certain commercial credit bureau reports.

2

*Second*, SBA developed additional support for its withholding of all tax identification numbers under Exemption 6.  This Court directed SBA to better explain why the agency lacks reliable information by which it can distinguish (and therefore segregate) which tax identification numbers are actually social security numbers (SSNs) (which, it is not disputed, Exemption 6 protects from release)—and which are employer identification numbers (EINs).  In particular, the Court characterized as a "plausible unaddressed possibility" the suggestion of Plaintiffs that the Social Security Administration ("SSA"), which generates SSNs, and the Internal Revenue Service ("IRS"), which generates EINs, could supply "assistance" to SBA to "segregate the electronic data." *Id.*  SBA accordingly sought analysis from IRS and SSA on the segregability problem posed by SBA's PPP data.  As explained in declarations filed today, the IRS and SSA each concluded that it could not accomplish the "assistance" Plaintiffs proposed, because of an insurmountable statutory prohibition:  Tax return information must be kept confidential, and it may not be disclosed except as authorized by statute.  26 U.S.C. § 6103(a).  Because a "taxpayer identifying number" is part of the taxpayer's identity (*id.* § 6103(b)(6)), and the "taxpayer's identity" is return information (*id.* § 6103(b)(2)(A)), the IRS records of SSNs and EINs are the "return information" of the loan borrowers (taxpayers) in question.  And neither IRS nor SSA has been given authorization to "assist[]" SBA.  And because IRS and SSA cannot supply the validating data with which SBA can compare the tax identification numbers PPP lenders collected from borrowers and transmitted to the agency, SBA cannot solve the segregability problem here.

In sum, SBA has answered the questions this Court raised about the remaining withholdings in dispute.  The results of the agency's efforts on remand reinforce the declarations SBA filed in support of its previous supplemental summary judgment motion in March and in April 2021, and supplemental summary judgment is therefore warranted in SBA's favor.

3

# BACKGROUND

The Court addressed the background of the case in its Memorandum Opinion, so it is only briefly summarized here.

## Withholdings Remaining At Issue At This Stage Of The Action

At issue at this stage of the case is the sufficiency of SBA's explanation for its application of Exemptions 4 and 6 to certain information regarding PPP loans.

*First*, under Exemption 4, SBA "reserved 1) '[i]nformation that would reveal whether a PPP loan is in default,' chiefly collected from PPP lenders through SBA's standard Form 1502, including 'the status of certain loans, the date associated with that loan status, the outstanding balance of all PPP loans, and internal codes that identify the SBA offices servicing and processing the PPP loans.'" Mem. Op., 2021 WL 2982173 at *2 (citation omitted); *see also* ECF No. 37-1, ¶¶ 14-15 ("1st Benderson Decl.").

*Second*, under Exemption 6, SBA also withheld the data field containing the Social Security Number ("SSN") or Employer Identification Number ("EIN") of each PPP borrower. *See* 1st Benderson Decl. ¶ 17. The Court explained: "Although SBA admitted that EINs are not themselves exempt from disclosure, it nonetheless reserved those numbers because they 'are stored in the same data field as [SSNs]' — which *are* protected under Exemption 6 — 'and cannot be reliably segregated from them in a dataset this large.'" Mem. Op., 2021 WL 2982173 at *2 (quoting 1/25/21 Ltr. from SBA to Plaintiffs at ECF p. 2).

## This Court's Memorandum Opinion

The Court granted in part and denied in part the Cross-Motions for Summary Judgment for reasons set forth in the Memorandum Opinion of July 15, 2021. (The branch of the cross-motions on which SBA prevailed—concerning application of Exemption 4 to proprietary identifying

4

numbers SBA licensed from Dun & Bradstreet—is not at issue at this stage of the case.  Mem. Op., 2021 WL 2982173 at *9-10.)  As to the remaining information, the Court remanded "for the agency to more fully support its withholdings with respect to interim loan-status information and borrower tax-identification numbers."  *Id.* at *1.

*First*, as to SBA's application of Exemption 4 to interim loan-status information and to related data fields that would reveal such information, the Court construed *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019), to mean that the "operative question" at the start of the Exemption 4 analysis is "whether PPP lenders customarily and actually treat interim loan status as confidential."  Mem. Op., 2021 WL 2982173 at *6.  The Court described that as the "$64,000 question."  *Id.* at *7.  "A survey of" a "small yet meaningful subset of lenders," the Court remarked, "along with credible substantiation of any individual lender's claim of customary and actual confidentiality with respect to interim PPP loan status, would go a long way toward bringing that material within Exemption 4's sweep."  *Id.* at *6.  The Court accordingly described its "expect[ation]" that SBA's submission on remand would "feature a particularized showing of the customary and actual practices of PPP lenders themselves."  *Id.* at *8.  And the Court remarked that "a survey of individual PPP lenders establishing their confidentiality practices, might well fortify any renewed Exemption 4 argument from the agency" drawing on the circumstances which SBA previously described as supporting an inference that the information withheld is protected under Exemption 4.  *See id.* at *6.

*Second*, as to SBA's application of Exemption 6 to tax-identification numbers and the problem of separating SSNs from EINs, the Court concluded that "the agency has not explained *why* it cannot reasonably segregate EINs from SSNs."  Mem. Op., 2021 WL 2982173 at *11.  The Court characterized as a "plausible unaddressed possibility" the suggestion of Plaintiffs that the

Social Security Administration, which generates SSNs, and the Internal Revenue Service, which generates EINs, could give "assistance" to SBA to "segregate the electronic data." *Id.* "To be clear," the Court added that it was "not here order[ing] the Government to actually carry out Plaintiffs' proposed strategy. Perhaps the SSA and IRS face the same barriers as does SBA. Or perhaps any disentangling will be excessively burdensome or time consuming in a dataset as large as the present so as to render the suggested tack '[un]reasonabl[e].'" *Id.* (quoting 5 U.S.C. § 552(b)).

## ARGUMENT

SBA has now completed the inquiries on remand in light of the guidance in the Memorandum Opinion, as explained in the declarations SBA is submitting herewith, alongside declarations from the IRS and SSA. *See* Third Declaration of Eric S. Benderson ("3d Benderson Decl."); Declaration of Sarah Tate, Attorney in the Office of the Associate Chief Counsel (Procedure and Administration) ("Tate Decl."); Declaration of Linda Frye, Acting Division Director for the Office of Privacy and Disclosure's FOIA and Transparency Division in SSA's Office of General Counsel ("Frye Decl."). Based on the results of the inquiries, and also on SBA's submissions to this Court in the two earlier Benderson Declarations (ECF Nos. 37-1, 44-1), SBA again seeks summary judgment as to the Exemption 4 and Exemption 6 withholdings in dispute.[1]

---

[1] "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 374-75. "Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed [and] submitted in good faith and [where] the court is satisfied that no factual dispute remains." *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002).

I.     **SBA Properly Withheld Under Exemption 4 the PPP Interim Loan Status Information It Obtained From Lenders Under An Assurance Of Confidentiality And Other Fields From Which Such Confidential Interim Information Can Be Inferred**

    A.     **Submitter-Specific Evidence Gathered On Remand Shows That PPP Lenders Treat Interim Loan Status Information As Confidential**

        1.     **Interim Loan Status Information Is Customarily And Actually Treated As Private**

FOIA "expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) ("*Food Mktg.*") (internal citations and brackets omitted).  One of those exemptions is set forth in 5 U.S.C. § 552(b)(4) (Exemption 4).   In particular, Exemption 4 "shields from mandatory disclosure 'commercial or financial information obtained from a person and privileged or confidential.'"  *Id.* at 2362 (quoting 5 U.S.C. § 552(b)(4)).  For information to be covered by Exemption 4, it must be "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizen Health Rsrch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).

At this stage of the case, only the third of those elements is in question.  Through its efforts on remand, SBA has compiled a substantial evidentiary foundation for concluding that the answer to the principal question raised in the Memorandum Opinion as to Exemption 4—"whether PPP lenders customarily and actually treat interim loan status as confidential"—is *yes*.  Mem. Op., 2021 WL 2982173 at *6.

SBA commenced its efforts to comply with the Court's remand guidance by contacting the top 300 PPP lenders, seeking their position on whether PPP loan status information is customarily and actually kept confidential.  The lenders SBA contacted are those that have made the largest number of PPP loans or the largest dollar value of PPP loans.  SBA also contacted numerous trade

7

associations representing segments of the lending community.  SBA also hosted two conference calls with bank and trade association personnel to discuss the Court's remand guidance.  3d Benderson Decl. ¶ 6.  SBA found no lender or trade association for lenders that stated that a PPP lender discloses interim financial status of their SBA loans to the public.  *Id.* ¶ 7.

Notably, twenty-four (24) lenders from across the United States have stated in the declarations filed today that they customarily and actually treat interim PPP loan status as confidential.  The declarations are further echoed in correspondence SBA received from five additional PPP lenders (and in a letter from the American Bankers Association).  *See* 3d Benderson Decl. ¶¶ 8-11.  According to SBA records, the individual lenders from across the United States that submitted the attached declarations, and the individual lenders that submitted the correspondence described above, serviced, collectively, about 1.29 million PPP loans constituting about $65 billion in net loan value—which is a substantial fraction of all PPP loans (about 11.8 million were approved), and of net loan dollars (valued at about $799.8 billion).  *Id.* ¶ 10.  (When describing their individual loan counts and net values, some of the lender declarations and correspondence reported their current PPP loan portfolio numbers, which omits loans made but subsequently forgiven through SBA procedures, thus understating the PPP borrowing those lenders actually handled.  *Id.*)

The lender submissions substantiate the confidential treatment of interim loan status information by describing its manner and purpose.  For example, many lenders stated that access to PPP interim loan status is restricted within the financial institution to only those employees responsible for handling a particular PPP loan.  *See* 3d Benderson Decl. ¶ 12 (citing, *inter alia*, Celtic Decl. ¶ 7; First Financial Decl. ¶ 7; First Home Decl. ¶ 7; First Horizon Decl. ¶ 7; TowneBank Decl. ¶ 7; United Decl. ¶ 7; Wesbanco Decl. ¶ 7; Western Alliance Decl. ¶ 6; Wintrust

Stmt. at 2).  *Cf. Food Mktg.*, 139 S. Ct. at 2363 (noting showing that "[e]ven within a company . . . only small groups of employees usually have access to" the information held confidential).

Lenders also stated that they train their employees not to disclose interim loan status information to outside persons or entities (except where legally required in particular instances, such as in connection with a court proceeding on a loan), and any such disclosure would be a violation of internal lender policies, which could result in a reprimand or termination of employment of the disclosing employee.  *See* 3d Benderson Decl. ¶ 13 (citing, *inter alia*, Celtic Decl. ¶ 7; First Financial Decl. ¶ 7; First Home Decl. ¶ 7; First Horizon Decl. ¶ 7; Leader Decl. ¶ 7; TowneBank Decl. ¶ 7; United Decl. ¶ 7; Wesbanco Decl. ¶ 7; Western Alliance Decl. ¶ 6; Wintrust Stmt. at 2).

Furthermore, noting that SBA regulations preserve the confidentiality of interim loan status information, lenders stated that an important rationale for such confidential treatment was to protect borrowers from harm that may occur if such information was released that could negatively impact the borrower's reputation or adversely affect borrower survivability and growth.  *See* 3d Benderson Decl. ¶ 14 (citing, *inter alia*, Celtic Decl. ¶ 8; First Financial Decl. ¶ 8; First Home Decl. ¶ 8; First Horizon Decl. ¶ 8; Hancock Whitney Decl. ¶ 8; Leader Decl. ¶ 8; Live Oak Decl. ¶ 8; TowneBank Decl. ¶ 8; United Decl. ¶ 8; Wesbanco Decl. ¶ 8; Western Alliance Decl. ¶ 7; Wintrust Stmt. at 2).

The evidence SBA gathered on remand thus supplies significant proof that "PPP lenders customarily and actually treat interim loan status as confidential."   3d Benderson Decl. ¶ 15 (quoting Mem. Op. 13).  That is especially so when the evidence compiled in light of the Court's remand order is considered *in combination with* the circumstances supporting confidentiality that SBA previously described in its prior summary judgment filing.  *See* 1st Benderson Decl. ¶¶ 24-

9

56; *see also U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 177, 179 (1993).  Those circumstances are SBA's regulations and operating procedures, FOIA's legislative history, judicial precedents in related contexts, and substantial practical considerations all supporting confidential treatment of interim loan status information.  1st Benderson Decl. ¶¶ 24-56.  Although this Court did not find SBA's argument based on those more general authorities sufficient to support summary judgment in the Memorandum Opinion, the Court recognized that the lender-focused evidence developed on remand  "might well fortify any renewed Exemption 4 argument from the agency" drawing on some of those circumstances.  Mem. Op., 2021 WL 2982173 at *6.

Importantly, although SBA did not get a one-hundred percent return from its inquiry, that does not show that there exist other (unidentified) PPP lenders who do *not* treat interim loan status information as confidential.  Many practical obstacles may have prevented particular lenders from responding to SBA, including the ongoing efforts those lenders are making to assist borrowers who continue to suffer the economic effects of the COVID-19 pandemic (especially hard-hit sectors such as restaurants, gyms, and hotels), and to complete the SBA loan forgiveness process for PPP borrowers who have applied for that relief.  3d Benderson Decl. ¶ 16.  As SBA previously explained, it lacks the resources or means to ask each borrower or each lender about their individual expectations regarding the privacy of interim loan status information.  1st Benderson Decl. ¶ 23.[2]  And FOIA's function is "to provide 'workable' rules," not to assign agencies unachievable tasks.  *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 27 (1983).

---

[2] Nor does FOIA ordinarily require that an agency seek assistance in determining the applicability of a FOIA exemption, separate and apart from the consultation and referral process included in the statute itself to protect other agencies' equities in the information requested.  *See* 5 U.S.C. 552(a)(6)(B)(iii)(III) (authorizing "consultation . . . with another agency having a substantial interest in the determination of the request"); *see also Yunes v. U.S. Dep't of Justice*, 263 F. Supp. 3d 82, 88-89 (D.D.C. 2017) (referral to another agency not required by law).

In short, through "a particularized showing of the customary and actual practices of PPP lenders themselves" and through its other submissions, SBA has carried out the instructions on remand to show that interim loan status information falls within the "sweep" of Exemption 4. *See* Mem. Op., 2021 WL 2982173 at *8.

### 2.      SBA Assured Continued Confidentiality

The Supreme Court left open in *Food Marketing* the possibility that Exemption 4 requires an agency assurance that it will maintain the confidentiality of private party information. In the Memorandum Opinion, 2021 WL 2982173 at *4, this Court adhered to its prior conclusion that the "better approach" to Exemption 4, consistent with decisions predating *Food Marketing*, "would be that privately held information is generally confidential absent an express statement by the agency that it would *not* keep information private, or a clear implication to that effect (for example, a history of releasing the information at issue)." *Renewable Fuels Ass'n v. EPA*, 519 F. Supp. 3d 1, 12 (D.D.C. 2021).

Here, there is no such "express statement" from SBA that "it would not keep" interim loan information private, and SBA has a "history' of safeguarding the information, not a "history of releasing" it.  Most prominently, at title 13, part 102 of the Code of Federal Regulations, SBA includes in its list of "Information Generally Exempt From Disclosure" the "[n]on-statistical information on defaults, delinquencies, losses etc.," and "[l]oan status, other than charged-off or paid-in-full."  3d Benderson Decl. ¶ 18 (citing 1st Benderson Decl. ¶ 22 & Ex. B thereto); *see* 13 C.F.R. Pt. 102, Subpt. A, App. A.  That assurance that interim PPP loan status information will be kept confidential provides an additional reason for upholding SBA's Exemption 4 application here.

11

3.      **Submitter-Specific Evidence Confirms That The Disputed Interim Loan Status Information Has Not Been Made Public**

The lender declarations and correspondence also reinforce SBA's prior showing that interim PPP loan status information is not the type of information available to buyers of commercial credit reports.  Cf. Mem. Op., 2021 WL 2982173 at *8 ("defer[ring] analysis" until after remand of Plaintiffs' contention that commercial credit reports available for private purchase publicly disclose information SBA withheld).  The declarations, for example, make plain that interim loan status information is not made public.  *See* 3d Benderson Decl. ¶ 11-15. Consequently, because of the numerous significant differences between the interim loan status information SBA collects from lenders through Form 1502 and the information disclosed to purchasers of commercial credit reports, the availability of commercial credit reports does not undermine the confidentiality of the interim loan status information SBA is withholding in this action.  3d Benderson Decl. ¶ 19; *see* ECF No. 44-1 ("2d Benderson Decl."), ¶¶ 4-25.

B.      **Additional Data Fields And Internal SBA Coding That Would Necessarily Reveal Interim Loan Status Information Also Fall Within Exemptions 4**

SBA has also correctly withheld under Exemption 4 the additional data fields and internal coding that would, if disclosed, unavoidably reveal interim loan status information, because those additional fields and coding would disclose the interim status of loans such as delinquency.  *See, e.g.*, 1st Benderson Decl. ¶ 20 (status date); *id.* ¶¶ 21, 55 (coding identifying servicing SBA office); *id.* ¶ 56 (outstanding balance).  This Court has recently applied the principle that FOIA Exemption 4 properly includes information that, if disclosed, would "necessarily reveal" information that Exemption 4 protects.  *See Renewable Fuels Ass'n*, 519 F. Supp. 3d at 7 (quoting *Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224, 1228–29 (D.C. Cir. 2008)).  That is, when information would "necessarily imply or reveal other information that itself meets all three Exemption 4

12

prongs," this Court observed, "then redactions are appropriate to avoid such disclosure."  *Id.* (internal quotation marks and brackets omitted) (citing, *inter alia*, *Nat'l Bus. Aviation Ass'n v. FAA*, 686 F. Supp. 2d 80, 86 (D.D.C. 2010)).  That is the situation here as to the additional data fields and internal coding SBA reserved.   3d Benderson Decl. ¶ 20.[3]

## II.    Exemption 6 Protects Social Security Numbers From Disclosure, And Employer Identification Numbers Are Not Reasonably Segregable From Them.

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The D.C. Circuit has "read the statute to exempt not just files, but also bits of personal information, such as names and addresses, the release of which would 'create[] a palpable threat to privacy.'"  *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987)).  What matters for the Exemption 6 analysis is "whether 'disclosure would compromise a substantial . . . privacy interest.'"  *Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1332 (D.C. Cir. 2014) (quoting *Consumers' Checkbook Ctr. v. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009)).

To recap:  SBA withheld the tax identification numbers (TINs) of PPP borrowers under Exemption 6.  For individual borrowers, that meant withholding a social security number (SSN); for businesses, the identifier was an employer identification number (EIN).  SBA demonstrated, and Plaintiffs did not contest, that borrowers' SSNs were protected from disclosure by Exemption

---

[3] The significant evidence SBA developed on remand establishing that lenders treat interim loan status information as confidential, described above, alternatively supports protection under Exemption 8 of the information the agency obtains from lenders through Form 1502, for the reasons SBA previously gave, and on which the Court did not rule.  1st Benderson Decl. ¶¶ 57-64. In the event the Court were to deny Exemption 4 coverage, the Court should consider the agency's arguments under Exemption 8.

6. "Although SBA admitted that EINs are not themselves exempt from disclosure, it nonetheless reserved those numbers because they 'are stored in the same data field as [SSNs]' — which *are* protected under Exemption 6 — 'and cannot be reliably segregated from them in a dataset this large.'"  Mem. Op., 2021 WL 2982173 at *2 (quoting 1/25/21 Ltr. from SBA to Plaintiffs at ECF p. 2).

As SBA explained, the PPP application form included a "free-text" field called "Business TIN (EIN, SSN)."  1st Benderson Decl. ¶¶ 71, 73.  Both EINs and SSNs are nine-digit unique numerical identifiers.  EINs are typically written with a single dash after the second digit (e.g., 12-3456789), while SSNs are usually written with dashes after the third and fifth digits (e.g., 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).  But absent that indication, there is no way to tell from a string of nine digits whether the number is an EIN or SSN.  *Id.* ¶ 72.  The PPP application form itself did not provide any way for a borrower to indicate whether the borrower was providing an EIN or SSN, apart from the placement of one or two dashes in the usual positions.  *Id.* ¶ 73.  Because "Business TIN" was a free-text field, the borrower was free to enter the nine-digit number without any dashes at all.  *Id.*

Lenders transmitted information from the PPP application form to SBA through an electronic interface known as "E-Tran."  *Id.* ¶ 74.  The interface required lenders to input an applicant's Business TIN as a string of nine digits without dashes, and then to check a box indicating whether the number being submitted was an EIN or SSN.  *Id*.  But because the PPP application form itself did not require the borrower to indicate which type of identification number the borrower was providing, lenders checking the box in E-Tran were often forced to guess whether they were submitting an EIN or SSN with the loan application.  *Id.* ¶ 74.  Inevitably, some lenders would have guessed incorrectly, and others would have made a manual error and inadvertently failed to check the box that they intended.  *Id.* ¶ 75.  As a result, SBA has good reason to believe

14

that some indeterminate share of the identification numbers recorded as EINs in its PPP loan database are in fact SSNs, and vice versa. *Id.* And SBA has no technical way to check or correct for such errors. *Id.*

Plaintiffs suggested that the Social Security Administration, which generates SSNs, and the Internal Revenue Service, which generates EINs, could give "assistance" to SBA to "segregate the electronic data"—and the Court concluded that, because SBA had not addressed that "plausible . . . possibility," "the agency has not explained *why* it cannot reasonably segregate EINs from SSNs." Mem. Op., 2021 WL 2982173 at *11. "To be clear," the Court added that it was "not here order[ing] the Government to actually carry out Plaintiffs' proposed strategy. Perhaps the SSA and IRS face the same barriers as does SBA. Or perhaps any disentangling will be excessively burdensome or time consuming in a dataset as large as the present so as to render the suggested tack '[un]reasonabl[e].'" *Id.* (quoting 5 U.S.C. § 552(b)).

The declarations submitted today demonstrate that neither the IRS nor the SSA can lawfully provide the assistance Plaintiffs suggested those agencies could supply. Tax return information must be kept confidential, and it may not be disclosed except as authorized by statute. 26 U.S.C. § 6103(a). Because a "taxpayer identifying number" is part of the taxpayer's identity (*id.* § 6103(b)(6)), and the "taxpayer's identity" is return information (*id.* § 6103(b)(2)(A)), the IRS records of SSNs and EINs are the "return information" of the loan borrowers (taxpayers) in question.

To segregate the EINs and SSNs of PPP loan borrowers, the IRS would need to inspect its own tax records to search for the taxpayer identification numbers at issue in this proceeding. No provision of the Code authorizes inspection of the tax records for the purpose proposed by Plaintiffs. Even assuming that the IRS could legally and operationally segregate the EINs and

15

SSNs, for the IRS to then advise SBA which taxpayer identification numbers are EINs, based on comparing the numbers to the IRS records, would violate Section 6103, because it would constitute a "disclosure" to SBA of the return information of the borrowers (taxpayers).  *See* 26 U.S.C. § 6103(b)(8) ("disclosure" means the "making known to any person in any manner whatever a return or return information").  The act of confirming which 9-digit numbers are EINs in the IRS records would be a bulk disclosure of return information prohibited by statute.  Because any confirmation by the IRS of the PPP borrowers' taxpayer identification numbers would constitute a disclosure of return information under Section 6103, the IRS cannot make the disclosure suggested.  *See* Tate Decl. ¶¶ 21-26.

For similar reasons, SSA could not provide SBA with the assistance that plaintiffs suggest. *See* Frye Decl. ¶¶ 5-8.  IRC § 6103(l)(5) authorizes the IRS to disclose certain return information to the SSA in accordance with an agreement entered into between the SSA and the IRS under Section 232 of the Social Security Act.  And Section 232 of the Social Security Act authorizes the IRS and the SSA to enter into agreements for the sharing of certain tax information for the purpose of processing federal wage and withholding tax reports.  The SSA is authorized to receive return information for the *limited* purpose of administering federal retirement and disability insurance programs, as set forth in IRC § 6103(l)(5), and *not* for any other purpose.  Accordingly, the SSA, as a federal agency, is also prohibited from segregating and disclosing the EINs and SSNs to the SBA.  *See* Tate Decl. ¶¶ 27-32; *see, e.g.*, 20 C.F.R. § 401.125 ("The Internal Revenue Code generally prohibits [SSA] from disclosing tax return information which [it] receive[s] to maintain individual earnings records.").  Moreover, SSA found no basis in the Privacy Act (5 U.S.C. § 552a) and in the Social Security Act (42 U.S.C. § 1306) for using its own SSN records to assist SBA in the manner proposed.  *See* Frye Decl. ¶¶ 10-11.

16

EINs are, therefore, return information, which both the IRS and SSA are forbidden from disclosing to SBA for the purpose of segregating SSNs from EINs.  And, without an accurate database of EINs or SSNs from IRS or SSA against which to compare SBA's data, SBA is unable to segregate the EINs from the SSNs.  Even if SBA were to hire a third party contractor to segregate the EINs from SSNs, the contractor would also have no way of knowing what numbers are EINs versus SSNs.   3d Benderson Decl. ¶ 28.  The only foolproof way to know whether the TIN provided on a PPP application is an EIN or an SSN is to go back to each borrower for confirmation. *Id.* ¶ 29.  But SBA lacks the means or resources to ask each borrower to essentially complete a new application form.  *Id.*

Put another way, there is no warrant under FOIA for requiring SBA to direct each lender to inquire of each borrower, as to about 12 million PPP loans, to indicate whether the number provided was an EIN or SSN.  Such a task would entail the generation of new records, which FOIA does not require.  *See Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request.") (citing, *inter alia*, *Forsham v. Harris*, 445 U.S. 169, 186 (1980) (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 161-62 (1975)).  Indeed, if a FOIA requester could compel an agency to seek information from persons or entities outside the Federal Government, then the resulting burdens would quickly undermine FOIA's function "to provide 'workable' rules." *Grolier*, 462 U.S. at 27.

Accordingly, SBA's remand inquiry has confirmed that EINs cannot be reasonably segregated from the concededly exempt SSNs.  SBA is therefore entitled to summary judgment on its withholding of PPP borrower TINs.

III.      **SBA Has Shown That Releasing The Disputed Information Would Cause Foreseeable Harm**

In the Memorandum Opinion, this Court declined to address whether SBA met the "foreseeable harm requirement" in 5 U.S.C. § 552(a)(8)(A)(i), until SBA showed its application of Exemption 4 was correct "in the first instance."  Mem. Op., 2021 WL 2982173 at *8.  The D.C. Circuit recently observed that the statute "imposes an independent and meaningful burden on agencies," while recognizing that the enacting Congress "was particularly concerned with increasing agency overuse and abuse of Exemption 5 and the deliberative process privilege"— which of course is not at issue here.  *See Reporters Comm. for Freedom of the Pres v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021).

As an initial matter, any "foreseeable harm" inquiry here cannot meaningfully be separated from the merits in the context at issue here.  *Cf. Reporters Comm.*, 3 F.4th at 370 (Exemption 5 foreseeable harm "inquiry is context specific").  Under Exemption 4, in explaining why interim loan status information is properly maintained as confidential, SBA necessarily has addressed the harm that would result from its improper disclosure—it is to avoid those harms that the material is kept confidential.  Under Exemption 6, as noted below, the issue here is less about the merits than on segregability.  But even if the question were about the balance of privacy interests versus public interests, the very fact that SBA found Exemption 6 applied would encapsulate a finding of foreseeable harm—in particular, the harm to personal privacy interests that exemption seeks to protect.

In any event, even if a separate "foreseeable harm" inquiry were warranted here, SBA has met that standard, through the Benderson Declarations, which have "directly articulate[d]" the "link between the specified harm[s]" and "the specific information contained in the material withheld."  *Reporters Comm.*, 3 F.4th at 371.  As to Exemption 4:  The harms that could result for

18

a PPP borrower from improper disclosure of interim loan information are obvious and serious. 3d Benderson Decl. ¶ 33 (citing 1st Benderson Decl. ¶ 40). Among other harms, a "delinquent" designation, which may be inaccurate or out of date or ultimately irrelevant because the PPP loan will be forgiven, would suggest to other creditors that the borrower does not deserve extensions of credit. Moreover, the borrower's business competitors would be poised to exploit such a designation by using it to erode customer confidence in the borrower. The possibility of widespread distribution of interim PPP loan status information, if released, is not a remote one. Indeed, entities such as the website federalpay.org have created a searchable database of all PPP borrowers that includes addresses and loan amount and calculates the estimated average payroll of those businesses. If SBA were to also release interim loan status information, that information likely would be made readily accessible. For example, searching an entity name through the Google search engine would lead an observer to the *federalpay.org* site, further undermining the integrity of consumer privacy laws and regulations. 3d Benderson Decl. ¶33 (citing 1st Benderson Decl. ¶ 53). SBA also described harm to PPP lenders that would result from disclosures enabling observers to link lender identities to particular loan portfolios. 2d Benderson Decl. ¶¶ 12-17.

As to Exemption 6: There is no question that the release of SSNs would cause a foreseeable harm by enabling identity theft. As to EINs, although there could also be substantial and reasonably foreseeable harms associated with the release of this information (Tate Decl. ¶¶ 37-45), the question before the Court is the segregability of that information, not the harms that would flow from its release. FOIA does not require the release of information that is not reasonably segregable from exempt information, regardless whether the release of the non-segregable information would cause foreseeable harm.

19

## CONCLUSION

For the foregoing reasons, SBA respectfully requests that the Court grant it summary judgment on all of the claims in the Amended Complaint arising from SBA's withholdings as described herein.

Dated:  September 27, 2021

Respectfully submitted,

BRIAN M. BOYNTON
*Acting Assistant Attorney General*

ELIZABETH J. SHAPIRO
*Deputy Branch Director*

*/s/ Indraneel Sur*
INDRANEEL SUR  (D.C. Bar 978017)
*Trial Attorney*

JAMES BICKFORD
*Trial Attorney*

Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883
Washington, D.C. 20044
Telephone:  (202) 616-8448
E-mail:      Indraneel.Sur@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

WP COMPANY LLC d/b/a THE
WASHINGTON POST, BLOOMBERG
L.P., DOW JONES & COMPANY, INC.,
PRO PUBLICA, INC., THE NEW YORK
TIMES COMPANY, AMERICAN
BROADCASTING COMPANIES, INC.
d/b/a ABC NEWS, AMERICAN CITY
BUSINESS JOURNALS, CABLE NEWS
NETWORK, INC., NBCUNIVERSAL
MEDIA, LLC d/b/a NBC NEWS, THE
ASSOCIATED PRESS, THE CENTER FOR
INVESTIGATIVE REPORTING
d/b/a REVEAL,

        *Plaintiffs,*

       v.

U.S. SMALL BUSINESS
ADMINISTRATION,

        *Defendant*.

Case No. 1:20-cv-01240
(JEB)

---

**DEFENDANT'S SECOND STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Dated: September 27, 2021

BRIAN M. BOYNTON
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

INDRANEEL SUR
Trial Attorney

JAMES BICKFORD
Trial Attorney

Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883
Washington, D.C. 20044
Telephone:  (202) 616-8448
E-mail:      Indraneel.Sur@usdoj.gov

*Counsel for Defendant*

Defendant United States Small Business Administration ("SBA") respectfully submits the following statement of material facts as to which there is no genuine issue under Local Rule 7(h)(1):

1.      SBA contacted the top 300 Paycheck Protection Program ("PPP") lenders, seeking their position on whether PPP loan status information is customarily and actually kept confidential. The lenders SBA contacted are those that have made the largest number of PPP loans or the largest dollar value of PPP loans.  3d Benderson Decl. ¶ 6.

2.      SBA contacted numerous trade associations representing segments of the lending community.  3d Benderson Decl. ¶ 6.

3.      SBA hosted two conference calls with bank and trade association personnel to discuss the Court's remand guidance.  3d Benderson Decl. ¶ 6.

4.      SBA found no lender or trade association for lenders that stated that a PPP lender discloses interim financial status of their SBA loans to the public.  3d Benderson Decl. ¶ 7.

5.      Twenty-four (24) lenders from across the United States have stated in the declarations filed today that they customarily and actually treat interim PPP loan status as confidential.  *See* 3d Benderson Decl. ¶ 9.

6.      The declarations are echoed in correspondence SBA received from five additional PPP lenders (and in a letter from the American Bankers Association and in a declaration from Bank Policy Institute).  3d Benderson Decl. ¶ 8.

7.      According to SBA records, the individual lenders that submitted the attached declarations, and the individual lenders that submitted the correspondence described above, serviced, collectively, about 1.29 million PPP loans constituting about $65 billion in net loan

value—which is a substantial fraction of all PPP loans (about 11.8 million were approved), and of net loan dollars (valued at about $799.8 billion).  *See* 3d Benderson Decl. ¶ 10.

8.      Many lenders stated that access to PPP interim loan status is restricted within the financial institution to only those employees responsible for handling a particular PPP loan.  *See* 3d Benderson Decl. ¶ 12.

9.      Many lenders also stated that they train their employees not to disclose interim loan status information to outside persons or entities (except where legally required in particular instances, such as in connection with a court proceeding on a loan), and any such disclosure would be a violation of internal lender policies, which could result in a reprimand or termination of employment of the disclosing employee.  *See* 3d Benderson Decl. ¶ 13.

10.      Lenders stated that an important rationale for such confidential treatment was to protect borrowers from harm that may occur if such information was released that could negatively impact the borrower's reputation or adversely affect borrower survivability and growth.  *See* 3d Benderson Decl. ¶ 14.

Dated:  September 27, 2021                    Respectfully submitted,

BRIAN M. BOYNTON                         */s/ Indraneel Sur*
Acting Assistant Attorney General            INDRANEEL SUR  (D.C. Bar 978017)
                                             Trial Attorney
ELIZABETH J. SHAPIRO
Deputy Branch Director                       JAMES BICKFORD
                                             Trial Attorney

                                             Federal Programs Branch, Civil Division
                                             United States Department of Justice
                                             P.O. Box 883
                                             Washington, D.C. 20044
                                             Telephone:  (202) 616-8448
                                             E-mail:    Indraneel.Sur@usdoj.gov

2