UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WP COMPANY LLC d/b/a THE
WASHINGTON POST, *et al.*,

    Plaintiffs,

    v.

U.S. SMALL BUSINESS
ADMINISTRATION,

    Defendant.

Civil Action No. 20-1240 (JEB)

## MEMORANDUM OPINION

Now before this Court for a fifth time, this Freedom of Information Act case asks whether the Small Business Administration has properly withheld certain information related to recipients of loans under its Paycheck Protection Program (PPP). Two types of records remain at issue: 1) information reflecting the payment status of individual loans and 2) borrower tax-identification numbers. Last time around, the Court found that SBA had not sufficiently supported its withholdings of these data, but it gave the agency another chance to bolster its positions. Believing SBA's efforts on remand sufficient, the Court now finds in its favor, concluding that the agency has properly reserved this under FOIA Exemptions 4 and 6. It will thus grant summary judgment to Defendant.

**I.    Background**

As the Court has confronted this case many times before, it summarizes only briefly the history of the litigation. Interested readers may refer to the Court's prior Opinions for a fuller recounting. See, e.g., WP Co. LLC v. U.S. Small Business Administration (WP I), 502 F. Supp.

1

3d 1, 7–10 (D.D.C. 2020); WP Co. LLC v. U.S. Small Business Administration (WP IV), No. 20-1240, 2021 WL 2982173, at *1–2 (D.D.C. July 15, 2021).

In April and May 2020, Plaintiffs, eleven national-news organizations, submitted FOIA requests to SBA seeking information about loan recipients under SBA's PPP and Economic Injury Disaster Loans (EIDL) program. WP IV, 2021 WL 2982173, at *1. After Plaintiffs brought suit to enforce their requests, the agency published "some loan-level information," but refused to provide "both dollar figures and borrower names and addresses for any PPP loan." Id. This Court agreed with the news organizations that neither FOIA Exemption 4 nor Exemption 6 covered the requested information and ordered the agency to release "names, addresses, and precise loan amounts," which SBA did shortly thereafter. Id. at *2.

On December 23, 2020, after this Court had awarded Plaintiffs attorney fees and closed the matter, SBA notified the news organizations that it had identified additional PPP loan-level information responsive to the FOIA requests. Id. The agency once again withheld certain information under Exemptions 4 and 6 — namely, 1) "'[i]nformation that would reveal whether a PPP loan is in default,' including 'the status of certain loans, the date associated with that loan status, the outstanding balance of all PPP loans, and internal codes that identify the SBA offices servicing and processing the PPP loans'"; 2) "Data Universal Numbering System (DUNS) numbers provided by the private company Dun & Bradstreet to SBA for individual PPP borrowers"; and 3) "individual borrowers' tax-identification numbers — viz., Social Security Numbers and Employer Identification Numbers." Id. (citing ECF No. 36-1 (1/25/21 Ltr. from SBA to Plaintiffs) at 2). This Court, considering Cross-Motions for Summary Judgment, granted SBA's Motion as to the DUNS numbers but denied the Motion as to the other sets of data,

instead allowing SBA the opportunity to provide more information about its withholding of these records. Id. at *7, 9, 11.

As to the first category, the primary component of which the Court will refer to as "interim loan-status information," the Court required evidence that would shed light on whether "PPP lenders customarily and actually" refrain from disclosing this information, such as "statements from PPP lenders themselves." Id. at *5–7 (emphasis omitted). With regard to the tax-identification numbers, the Court instructed SBA to "explain[] why it cannot reasonably segregate EINs from SSNs," including by assessing Plaintiffs' suggestion to seek assistance from the Social Security Administration and Internal Revenue Service. Id. at *11 (emphasis deleted).

Having accomplished its tasks, SBA now returns with additional material in hand, along with a new Motion for Summary Judgment. See ECF No. 51 (Def. Second Supplemental MSJ).

## II.     Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. Department of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith."  SafeCard Services., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious," FOIA "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  U.S. Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### III.    Analysis

FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules[,] . . . shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  The Government need not, however, turn over requested information that falls into one of nine statutorily created exemptions from FOIA's broad directive.  See id. § 552(b)(1)–(9).  When it withholds records, the Government bears the burden of providing a "relatively detailed justification" for its withholding, "specifically identifying the reasons why a particular exemption is relevant." Morley v. CIA, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (quoting King v. U.S. Department of

Justice, 830 F.2d 210, 219 (D.C. Cir. 1987)).  Courts can compel the release of any records that do not satisfy the requirements of at least one exemption.  See Reporters Committee, 489 U.S. at 755.

Here, SBA once again seeks to withhold two categories of information: 1) the interim payment status of individual PPP loans (along with additional data that would reveal that status) under Exemption 4 and 2) tax identification numbers under Exemption 6.  The Court considers each in turn.

A.  Exemption 4

Exemption 4 shields from disclosure "commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).  To demonstrate that this exemption shelters the information withheld, SBA must show that it is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." Public Citizen Health Research Group v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  In the previous round of briefing, only the third element was in dispute.  The Court concluded that SBA had not canvassed the actual lenders, and so it instructed the agency to come back with data that would allow the Court to assess "whether PPP lenders customarily and actually treat interim loan status as confidential." WP IV, 2021 WL 2982173, at *6.

Plaintiffs wisely concede that SBA has done just that and that its submissions are now sufficient; indeed, SBA's research went above and beyond what is required.  See ECF No. 53 (Pl. Opp.) at 6.  Since it was last before this Court, SBA has "contact[ed] the top 300 PPP lenders, seeking their position on whether PPP loan status information is customarily and actually kept confidential" and "found no lender or trade association for lenders that stated a PPP lender discloses interim financial status of their SBA loans to the public." Def. 2d Suppl. MSJ at

5

7–8 (citing ECF No. 51-1 (3d Declaration of Eric Benderson), ¶¶ 6–7). The agency also filed a declaration from 24 lenders stating that "they customarily and actually treat interim PPP loan status as confidential." Id. (citing 3d Benderson Decl., ¶¶ 8–11). This evidence, especially when considered alongside SBA's earlier submissions, is more than sufficient to allow the Court to conclude that "PPP lenders customarily and actually treat interim loan status as confidential." WP IV, 2021 WL 2982173, at *6. The additional data fields and internal coding that would necessarily reveal that confidential status also fall within the scope of Exemption 4. See id. at *5 (citing Renewable Fuels Association v. U.S. EPA, 519 F. Supp. 3d 1, 7 (D.D.C. 2021)).

That leaves only one issue for the Court to address: whether SBA has satisfied the foreseeable-harm requirement set out in 5 U.S.C. § 552(a)(8)(A)(i). Assuming this requirement applies to Exemption 4, as the parties do, SBA "must explain how disclosing, in whole or in part, the specific information withheld under Exemption 4 would harm an interest protected by this exemption, such as by causing genuine harm to [the submitter's] economic or business interests." Center for Investigative Reporting v. U.S. Customs and Border Protection, 436 F. Supp. 3d 90, 113 (D.D.C. 2019) (citations and internal quotation marks omitted); cf. Reporters Committee for Freedom of the Press v. FBI, 3 F.4th 350, 369 (D.C. Cir. 2021) (noting concern with "abuse of Exemption 5" drove adoption of foreseeable-harm requirement). As the Government points out, the same documents that establish that the withheld information is "privileged or confidential" provide the requisite explanation of foreseeable harm. See Def. 2d Suppl. MSJ at 18–19; ECF No. 55 (Def. Reply) at 4–8.

In particular, SBA's declarations from Eric Benderson, Associate General Counsel for Litigation and Chief FOIA Officer at SBA, "concretely explain how disclosure 'would'" cause harm to an interest protected by the exemption. Reporters Committee, 3 F.4th at 370–71. In

6

those declarations, Benderson explains that disclosure of the withheld information "would harm the interests of (1) PPP borrowers, (2) PPP lenders, and (3) SBA itself." ECF No. 55-1 (4th Declaration of Eric Benderson), ¶ 9. Drawing on input collected from lenders, Benderson asserts that disclosure of interim loan-status information — which may identify a borrower as delinquent on its loan, even if that status is temporary or ultimately irrelevant — could "negatively impact the borrower's reputation or creditworthiness, or adversely affect its survivability and growth." Id., ¶ 10 (citing 3d Benderson Decl., ¶ 14). As to lenders, "[r]elease of interim loan status information could lead to an adversarial relationship with a lender's own borrowers or allegations that the lender negligently released information that caused the borrower financial harm." Id., ¶ 13 (citing ECF No. 37-1 (1st Declaration of Eric Benderson), ¶¶ 23, 40, 42 and ECF No. 44-1 (2d Declaration of Eric Benderson), ¶¶ 14–16). Disclosure would also "create significant and unprecedented opportunity for business competitors of PPP lenders to target their local or regional marketing efforts at PPP borrowers not designated as being in default," thus putting PPP lenders at a competitive disadvantage. Id. Finally, as to SBA, disclosure would cause "regulated lenders [to] lose confidence in the agency's future ability to protect confidential information . . . creat[ing] an incentive not to participate in the agency's programs." Id., ¶ 14.

     Despite Plaintiffs' protests that such harms are too "attenuated and conjectural" to satisfy the foreseeable-harm standard, see Pl. Opp. at 7, the Court finds that these declarations have "directly articulated '[a] link between the specified harm and the specific information contained in the material withheld.'" Reporters Committee, 3 F.4th at 371 (citing H.R. Rep. No. 391, 114th Cong., 2d Sess. 1, 9 (2016)). SBA has thus satisfied the foreseeable-harm requirement and has properly withheld the interim loan-status information under Exemption 4.

B.  Exemption 6

The other set of information at issue is PPP borrowers' tax-identification numbers, which include both SSNs for individual borrowers and EINs for businesses.  See Def. 2d Suppl. MSJ at 13.  All agree that SSNs are properly withheld under Exemption 6 — which covers information "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6) — and that EINs are not.  See id. at 13–14; Pl. Opp. at 9.  SBA has nonetheless withheld the EINs because it asserts that it cannot reasonably segregate them from the SSNs.  See Def. 2d Suppl. MSJ at 14; WP IV, 2021 WL 2982173, at *10 (explaining how SSNs and EINs are collected and why a reader would not be able to tell in which category a particular number belongs).

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  While the Government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013) (citation omitted), such presumption of compliance does not obviate its obligation to carry its evidentiary burden and fully explain its decisions on segregability.  See Mead Data Central, Inc. v. U.S. Department of Air Force, 566 F.2d 242, 261–62 (D.C. Cir. 1977).  In the previous round of summary-judgment motions, this Court found that SBA had not met its obligation to provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." WP IV, 2021 WL 2982173, at *10 (quoting Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010)) (internal quotation marks omitted); see also Mead, 566 F.2d at 261.  The Court instructed the Government to return with a more detailed explanation of why it could not segregate SSNs from EINs and, in particular, to

8

explore the option of seeking assistance from the SSA and IRS. WP IV, 2021 WL 2982173, at *10–11.

SBA has now proffered a sufficiently detailed explanation of its inability to segregate. At the Court's prompting, the agency contacted the IRS and SSA to determine whether their assistance might make segregation of the EINs possible. See 3d Benderson Decl., ¶ 24. Both agencies concluded that they were "prohibited by law from providing SBA with results of a comparison between SBA's PPP data and the data possessed by those agencies, which would be a critical step for the segregation of EINs from SSNs according to the strategy as proposed by Plaintiffs." Id.; see also ECF No. 51-34 (1st Declaration of Sarah Tate); ECF No. 51-33 (Declaration of Linda Frye). That is because the IRS determined that EINs and SSNs are "tax return information" that it may not disclose except as allowed by regulation, and there is no regulation allowing disclosure here. See 3d Benderson Decl., ¶¶ 25–27 (citing Tate Decl., ¶¶ 15, 18–19, 22, 30 & n.3; Frye Decl., ¶¶ 4–12). "Without an accurate database of EINs or SSNs from IRS or SSA against which to compare SBA's data," SBA asserts, "it is impossible to segregate the EINs from the SSNs" and so Plaintiffs' proposed strategy offers no solution. Id., ¶ 28.

SBA could, in theory, segregate the EINs by asking the borrowers of each of the approximately 12 million PPP loans to indicate whether the number they provided was an EIN or an SSN, but it understandably "lacks the means or resources" to do so. Id., ¶ 29. Doing so, furthermore, would generate new records, see Def. 2d Suppl. MSJ at 17, and it is well established that FOIA does not require agencies to create documents that do not already exist. See, e.g., Kissinger v. Reporters Committee For Freedom of the Press, 445 U.S. 136, 152 (1980); Yeager v. DEA, 678 F.2d 315, 321 (D.C. Cir. 1982) ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request.").

9

This explanation is sufficient to fulfill SBA's obligation to "show with 'reasonable specificity' why the [data] cannot be further segregated or why the [data] is not reasonably segregable." Electronic Privacy Information Center v. U.S. Department of Homeland Security, 926 F. Supp. 2d 311, 315 (D.D.C. 2013) (quoting Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002)) (emphasis in original). The question before this Court is not whether the IRS's and SSA's reading of the tax statutes is the best one, cf. Pl. Opp. at 10–11; rather, the Court is tasked only with ensuring that the agency claiming the exemption — SBA — has made a good-faith effort to segregate the data and has clearly explained why it cannot reasonably do so. SBA has done that here.

Finally, to the extent that SBA must demonstrate foreseeable harm for the Exemption 6 withholdings, any argument that they have not done so has been forfeited. See Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice, No. 19-3626, 2021 WL 4502039, at *6 n.4 (D.D.C. Sept. 30, 2021) (finding foreseeable-harm challenge forfeited where plaintiff argued as to other claimed exemptions but not as to exemption at issue and did not argue release would be harmless). In any event, it is not difficult to note how people would be injured by the release of their SSNs.

**IV.    Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment. A separate Order so stating shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: December 13, 2021